IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

UNIMED PHARMACEUTICALS, INC., )
a Delaware corporation, and )
LABORATORIES BESINS )
ISCOVESCO, a Delaware corporation, )
)
    Plaintiffs, )     CIVIL ACTION FILE
)
    v. )     NO. 1:03-CV-2501-TWT
)
WATSON PHARMACEUTICALS, INC., )
a Nevada corporation, )
)
    Defendant. )

**WATSON'S REPLY TO PLAINTIFFS' PRINCIPAL
CLAIM-CONSTRUCTION BRIEF**

Of Counsel:

Barry S. White
David A. Rabin          Steven M. Amundson
MORRIS, MANNING & MARTIN, LLP   John G. Taylor
Georgia Bar No. 591469       Joyce W. Luk
1600 Atlanta Financial Center     Jennifer Chung
3343 Peachtree Road, NE       FROMMER LAWRENCE & HAUG LLP
Atlanta, Georgia 30326        745 Fifth Avenue
Telephone: (404) 233-7000     New York, New York 10151
Facsimile: (404) 365-9532      Telephone: (212) 588-0800
                           Facsimile: (212) 588-0500

Attorneys for Defendant
Watson Pharmaceuticals, Inc.     August 12, 2005

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................. iii

INTRODUCTION ............................................................................1

ARGUMENT ...................................................................................2

    I.    The Court Should Adopt Watson's
        Proposed Claim Constructions.............................................................2

        A.    Unimed Failed to Construe the Vast Majority
            of the Claim Language Identified by the Parties
            as Disputed and Has Now Waived Its Right
            to Propose Constructions for That Language .............................2

            1.    Summary of the Argument ...............................................2

            2.    Unimed Has Waived the Right to Argue
                 Constructions for Claim Language That
                 It Failed to Address in Its Principal Brief.........................4

        B.    The Evidence Demonstrates that Watson Proposes the
            Proper Constructions of the Disputed Claim Language
            That Unimed Did Address in Its Principal Brief ......................15

            1.    The Phrase "Consisting Essentially Of"
                 in Claims 1, 9, 10, 18, and 31 .........................................15

            2.    The "Sodium Hydroxide" Limitation in Claim 9 ...........17

                 (a)    The Term "Sodium Hydroxide" in Claim 9.........17

                 (b)    The Phrase "About 3% Sodium
                      Hydroxide" in Claim 9 as Issued .........................17

                 (c)    The Phrase "About 3% 0.1 N Sodium
                      Hydroxide" in Claim 9 as "Corrected" ...............18

    #1305061 v1 - Reply to Pl Claim Constr Brief

II.   The Court Should Not Decide as Part of Claim
      Construction the Infringement and Validity
      Issues That Unimed Raised in Its Principal Brief ..............................20

      A.   The Determination Whether an Unlisted Ingredient
           Affects the Basic and Novel Properties of a
           Claimed Invention Is a Factual Inquiry Not
           Properly Decided as Part of Claim Construction......................20

      B.   The Validity of the Certificate of Correction Is Not a
           Claim Construction Issue, and Should Be Decided on a
           Separate Motion for Partial Summary Judgment that
           Watson Will File No Later than September 9, 2005 ................26

CONCLUSION ........................................................................................28

# TABLE OF AUTHORITIES

**Cases**

Abbott Labs. v. Syntron Bioresearch, Inc.,
    334 F.3d 1343 (Fed. Cir. 2003) .......................................................................13

AK Steel Corp. v. Sollac,
    344 F.3d 1234 (Fed. Cir. 2003) ................................................... 21, 22, 23, 24

Allstate Ins. Co. v. Swann,
    27 F.3d 1539 (11th Cir. 1994) .......................................................................13

Bayer AG v. Sony Elecs., Inc.,
    229 F. Supp. 2d 332 (D. Del. 2002) ............................................................23

Becton Dickinson & Co. v. C.R. Bard, Inc.,
    922 F.2d 792 (Fed. Cir. 1990) .......................................................................13

Davis v. Brunswick Corp.,
    854 F. Supp. 1574 (N.D. Ga. 1994) ..............................................................13

Eli Lilly & Co. v. Aradigm Corp.,
    376 F.3d 1352 (Fed. Cir. 2004) .....................................................................14

Harris Corp. v. Ericsson Inc.,
    Nos. 03-1625 2005 WL 1845103 (Fed. Cir. Aug. 5, 2005) .........................13

Hartsfield v. Lemacks,
    50 F.3d 950 (11th Cir. 1995) .........................................................................12

Kim v. Earthgrains Co.,
    No. 01 C 3895, 2005 WL 66071 (N.D. Ill. Jan. 11, 2005) .............. 15, 23, 24

Lewis v. Brunswick,
    107 F.3d 1494 (11th Cir. 1997) .....................................................................13

Pordy v. Land O'Lakes, Inc.,
        No. 01 Civ. 0579 (JSR), 2002 WL 31571639
        (S.D.N.Y. Nov. 18, 2002) ....................................................................... 23, 24

PPG Indus. v. Guardian Indus. Corp.,156 F.3d 1351
        (Fed. Cir. 1998).......................................................................... 16, 21, 22, 23

SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.,
        242 F.3d 1337 (Fed. Cir. 2001) ...................................................................22

Smithkline Beecham Corp. v. Apotex Corp.,
        403 F.3d 1331 (Fed. Cir. 2005) ...................................................................19

United States v. Ga. Dep't of Natural Res.,
        897 F. Supp. 1464 (N.D. Ga. 1995)..............................................................13

# INTRODUCTION

Watson and Unimed agreed—and the Court ordered—that at this stage of the case they would address claim construction.  Before filing their briefs, the parties even exchanged lists of the terms and phrases that each believed needed construction.  Watson's principal brief addressed the issue at hand—claim construction—and specifically construed the terms and phrases identified as disputed.  Unimed, however, addressed only a few of these and instead devoted the bulk of its brief to issues other than claim construction.

Having not addressed many terms and phrases in its brief, despite knowing that Watson would do so, Unimed should not be allowed to address them for the first time in its reply brief and thus deprive Watson of the opportunity to respond.

Sections V and VIII of Unimed's brief do not deal with claim construction at all.  Instead, they concern Unimed's infringement theories and raise issues that require factual inquiries inappropriate for resolution in a claim-construction proceeding.

The largest section of Unimed's brief likewise addresses a non-claim-construction issue, namely, the validity and applicability of Unimed's certificate of correction, which issued after it filed this lawsuit.  Evidently uncomfortable with the certificate, Unimed asks the Court to rule now on the certificate's validity and

applicability even though Unimed does not and cannot explain how it is a claim-construction issue.  Thus, the Court should not rule on the certificate of correction's validity and applicability as part of claim construction.  Instead, Watson requests that the Court defer decision until it receives a properly-filed motion and full briefing on this issue.  Watson intends to file a motion for partial summary judgment that the certificate of correction is invalid no later than September 9, 2005.

## ARGUMENT

I.    The Court Should Adopt Watson's
Proposed Claim Constructions

A.    Unimed Failed to Construe the Vast Majority of the Claim
Language Identified by the Parties as Disputed and Has Now
Waived Its Right to Propose Constructions for That Language

1.    Summary of the Argument

The parties agreed to a procedure for addressing claim-construction issues in this case, which the Court then adopted.  The parties agreed that they would exchange lists of claim terms and phrases whose meanings are in dispute and then submit principal and reply briefs concerning the construction of those terms and phrases.  By identifying the disputed terms and phrases in advance of briefing, the parties were put on notice as to which language required construction and had the opportunity to propose constructions in their principal briefs.  In their respective

reply briefs, each party has the opportunity to respond to the claim-construction arguments contained in its opponent's principal brief.

In its principal brief, however, Unimed did not propose constructions for the vast majority of the terms and phrases that were identified as requiring construction by the Court—including most of the terms and phrases that Unimed itself identified as disputed.  If Unimed includes arguments concerning the construction of these terms and phrases for the first time in its reply brief, Watson will not have an opportunity to respond to them.  Unimed, on the other hand, will have a full opportunity to respond to all of Watson's claim-construction arguments.

This is classic "sand-bagging" and could only have resulted from a deliberate choice by Unimed.  Permitting this would violate the agreed and ordered claim-construction procedures and give Unimed an unfair, tactical advantage over Watson.  Accordingly, the Court should:  (1) rule that Unimed has waived its right to propose constructions for terms and phrases that it failed to address in its principal brief; (2) disregard any arguments advanced by Unimed in its reply brief concerning the construction of terms and phrases that it failed to address in its principal brief; and (3) adopt Watson's unopposed claim constructions.

2.      Unimed Has Waived the Right to Argue Constructions for
        Claim Language That It Failed to Address in Its Principal Brief

In a February 9, 2005 letter from Watson to Unimed, Watson suggested that

the parties follow a procedure to "advance the resolution" of claim-construction

issues.  (Ex. 38 at 2 [WA3661])  In that letter, Watson proposed that the parties

exchange a list of disputed claim terms and phrases, after which the parties would

exchange proposed claim interpretations for all the disputed language.  (Ex. 38 at 2

[WA3661])  In a March 23, 2003 letter, Unimed agreed that "it makes sense" to

follow such a procedure.  (Ex. 39 [WA3664])  The Court's May 25, 2005 amended

scheduling order included the procedure of identifying disputed claim language in

advance of the principal briefs.  (Ex. 40 at 2 [WA3666])  On July 14, 2005, the

parties did in fact exchange lists of claim terms and phrases that require

construction by the Court.  (Ex. 41 [WA3668-69]; Ex. 42 [WA3670-71])

In its July 25, 2005 principal brief, however, Unimed failed to construe the

vast majority of the over twenty-five terms and phrases that it and Watson

identified as disputed.  The table below summarizes the parties' constructions of

the disputed terms and phrases, with shading indicating the absence of a

construction by Unimed:

| Terms and Phrases the Parties Identified in Their July 14, 2005 Letters as Requiring Construction by the Court | | Proposed Constructions in Principal Briefs | |
|---|---|---|---|
| Watson | Unimed | Watson | Unimed |
| pharmaceutical composition | pharmaceutical composition | a composition that affects well-being (7/25/05 Watson Br. at 15) | |
| hydroalcoholic | --- | a combination of water and alcohol (7/25/05 Watson Br. at 23) | |
| hydroalcoholic gel formulation | --- | a formulation containing a combination of water and alcohol in a semisolid system consisting of either suspensions made up of small inorganic particles or large organic molecules interpenetrated by a liquid (7/25/05 Watson Br. at 23) | |
| ethanol | alcohol / ethanol | the pure chemical, $C_2H_5OH$ (7/25/05 Watson Br. at 28) | |
| isopropanol | --- | isopropyl alcohol containing not less than 99.0 percent $C_3H_8O$ (7/25/05 Watson Br. at 27) | |

#1305061 v1 - Reply to Pl Claim Constr Brief

| Terms and Phrases the Parties Identified in Their July 14, 2005 Letters as Requiring Construction by the Court | | Proposed Constructions in Principal Briefs | |
|---|---|---|---|
| **Watson** | **Unimed** | **Watson** | **Unimed** |
| sodium hydroxide | --- | the solid material with the chemical formula NaOH (7/25/05 Watson Br. at 28) | |
| about 1% to about 5% sodium hydroxide (as issued) | about 1% to about 5% sodium hydroxide (as issued) | 0.9% to 5.5% solid sodium hydroxide (7/25/05 Watson Br. at 33) | |
| about 1% to about 3% sodium hydroxide (as issued) | about 1% to about 3% sodium hydroxide (as issued) | 0.9% to 3.3% solid sodium hydroxide (7/25/05 Watson Br. at 33) | |
| about 1% to about 5% 0.1 N sodium hydroxide (as corrected) | about 1% to about 5% 0.1 N sodium hydroxide (as corrected) | 0.9% to 5.5% of a 0.1 N solution of sodium hydroxide (7/25/05 Watson Br. at 34) | |

#1305061 v1 - Reply to Pl Claim Constr Brief

| Terms and Phrases the Parties Identified in Their July 14, 2005 Letters as Requiring Construction by the Court | | Proposed Constructions in Principal Briefs | |
|---|---|---|---|
| Watson | Unimed | Watson | Unimed |
| about 1% to about 3% 0.1 N sodium hydroxide (as corrected) | about 1% to about 3% 0.1 N sodium hydroxide (as corrected) | 0.9% to 3.3% of a 0.1N solution of sodium hydroxide (7/25/05 Watson Br. at 37) | includes concentrations up to (but not including) 4% 0.1 N sodium hydroxide (7/25/05 Unimed Br. at 33), which corresponds to concentrations of solid sodium hydroxide up to (but not including) 0.016% (7/25/05 Unimed Br. at 32) |
| gelling agent | --- | thickener (7/25/05 Watson Br. at 38) | |
| gel | --- | semisolid system[] consisting of either suspensions made up of small inorganic particles or large organic molecules interpenetrated by a liquid (7/25/05 Watson Br. at 40) | |

| Terms and Phrases the Parties Identified in Their July 14, 2005 Letters as Requiring Construction by the Court | | Proposed Constructions in Principal Briefs | |
| --- | --- | --- | --- |
| **Watson** | **Unimed** | **Watson** | **Unimed** |
| isopropyl myristate…in a concentration…of about 0.5% | isopropyl myristate…in a concentration of about 0.5% | isopropyl myristate in a concentration of 0.45% to 0.55% (7/25/05 Watson Br. at 41) | |
| isopropyl myristate… in a concentration…of about 0.5% | isopropyl myristate…in a concentration selected from the group consisting of about 0.5%, 1%… | isopropyl myristate in a concentration of 0.45% to 0.55% (7/25/05 Watson Br. at 41) | |
| isopropyl myristate… in a concentration…of about 1% | isopropyl myristate…in a concentration selected from the group consisting of about 0.5%, 1%… | isopropyl myristate in a concentration of 0.9% to 1.1% (7/25/05 Watson Br. at 42) | |
| amount sufficient | --- | a quantity that is enough to meet the needs of a situation or a proposed end (7/25/05 Watson Br. at 42) | |

| Terms and Phrases the Parties Identified in Their July 14, 2005 Letters as Requiring Construction by the Court | | Proposed Constructions in Principal Briefs | |
|---|---|---|---|
| Watson | Unimed | Watson | Unimed |
| daily dose | --- | the measured quantity of a therapeutic agent to be taken during the period of a day (7/25/05 Watson Br. at 43) | |
| applied in a single or in divided doses | --- | the measured quantity of a therapeutic agent to be applied in one part or separated into several parts (7/25/05 Watson Br. at 44) | |
| achieve…within at least about 36 hours | --- | to attain a desired end before the end of a minimum time frame that is reasonably close to 36 hours (7/25/05 Watson Br. at 44) | |
| substantially maintained…for at least 24 hours | --- | largely but not wholly keeping in an existing state for a minimum period of 24 hours (7/25/05 Watson Br. at 45) | |
| maintained…for at least 24 hours | --- | keeping in an existing state for a minimum period of 24 hours (7/25/05 Watson Br. at 46) | |

#1305061 v1 - Reply to Pl Claim Constr Brief

| Terms and Phrases the Parties Identified in Their July 14, 2005 Letters as Requiring Construction by the Court | | Proposed Constructions in Principal Briefs | |
|---|---|---|---|
| **Watson** | **Unimed** | **Watson** | **Unimed** |
| at least 2 consecutive days | --- | a minimum of 2 days following one after the other in order (7/25/05 Watson Br. at 46) | |
| at least 30 consecutive days | --- | a minimum of 30 days following one after the other in order (7/25/05 Watson Br. at 47) | |

| Terms and Phrases the Parties Identified in Their July 14, 2005 Letters as Requiring Construction by the Court | | Proposed Constructions in Principal Briefs | |
|---|---|---|---|
| Watson | Unimed | Watson | Unimed |
| --- | consisting essentially of | The claim covers products containing the specified ingredients as well as products containing unspecified ingredients provided that the unspecified ingredients do not materially affect the basic and novel characteristics of the claimed invention. (7/25/05 Watson Br. at 25)<br><br>Watson identified the basic and novel characteristics of the product as the physical properties of the product and its drug-delivery characteristics. (7/25/05 Watson Br. at 26) | The invention must include the listed ingredients, but can also include other unlisted ingredients if they do not materially affect the basic and novel properties of the invention. (7/25/05 Unimed Br. at 36)<br><br>Unimed failed to specify any basic and novel properties. |

#1305061 v1 - Reply to Pl Claim Constr Brief

| Terms and Phrases the Parties Identified in Their July 14, 2005 Letters as Requiring Construction by the Court | | Proposed Constructions in Principal Briefs | |
| --- | --- | --- | --- |
| Watson | Unimed | Watson | Unimed |
| --- | polyacrylic acid… in a concentration of about 1% | 0.9% to 1.1% $(CH_2CHCOOH)_x$, an acrylic or acrylate resin formed by the polymerization of acrylic acid (7/25/05 Watson Br. at 39) | |
| --- | ethanol…in a concentration of about 72.5% | | |
| --- | alcohol…in a concentration of about 72.5% | | |
| about[1] | | at most, a variation of 10% by weight (7/25/05 Watson Br. at 31) | approximately (7/25/05 Unimed Br. at 30) |

The law from both this district and the Eleventh Circuit is clear that Unimed

should now be precluded from construing the claim language it failed to construe

in its principal brief.  See Hartsfield v. Lemacks, 50 F.3d 950, 953 (11th Cir. 1995)

("Issues that clearly are not designated in the initial brief ordinarily are considered

---

[1] Although neither party identified "about" as a separate term to be construed by the Court, several phrases identified as requiring construction include "about" and both parties proposed constructions for this term.

#1305061 v1 - Reply to Pl Claim Constr Brief

abandoned.") (quoting Allstate Ins. Co. v. Swann, 27 F.3d 1539, 1542 (11th Cir. 1994)); United States v. Ga. Dep't of Natural Res., 897 F. Supp. 1464, 1471 (N.D. Ga. 1995) ("This court will not consider arguments raised for the first time in a reply brief."); Davis v. Brunswick Corp., 854 F. Supp. 1574, 1585 n.5 (N.D. Ga. 1994) (refusing to consider new issues raised in reply brief), abrogated on other grounds by Lewis v. Brunswick, 107 F.3d 1494 (11th Cir. 1997).

Federal Circuit precedent accords with Eleventh Circuit precedent.  See, e.g., Abbott Labs. v. Syntron Bioresearch, Inc., 334 F.3d 1343, 1355 (Fed. Cir. 2003) ("Abbott has waived the doctrine of equivalents argument by failing to raise it in its opening brief."); cf. Harris Corp. v. Ericsson Inc., Nos. 03-1625, 03-1626, 2005 WL 1845103, at *7 (Fed. Cir. Aug. 5, 2005) (noting that Federal Circuit law applies in the related context of determining whether a party has raised a new claim-construction argument for the first time on appeal).  The Federal Circuit considers waiver particularly appropriate where a party does not timely raise an argument because of a "knowing tactical decision."  Becton Dickinson & Co. v. C.R. Bard, Inc., 922 F.2d 792, 800 (Fed. Cir. 1990).

Here, Unimed did not say why it failed to construe a number of the terms and phrases that both it and Watson identified as disputed.  Inasmuch as the parties exchanged lists of disputed claim language almost two weeks before filing their

principal briefs, however, Unimed's failure cannot be attributed to lack of notice, negligence, or oversight.  (Ex. 41 [WA3668-69]; Ex. 42 [WA3670-71])  Rather, Unimed's failure seems like a knowing tactical decision.  If Unimed includes claim-construction arguments in its reply brief that it withheld from its principal brief, this will deprive Watson of the opportunity to respond to those arguments. Unimed, meanwhile, will have a full opportunity to respond to Watson's proposed constructions and supporting arguments.  This would prejudice Watson and would violate the agreed and ordered procedure for resolving claim-construction disputes.

Accordingly, the Court should not consider any arguments raised in Unimed's reply brief—or at any other point in these proceedings—concerning the construction of terms and phrases that Unimed did not address in its principal brief. The Court should instead adopt Watson's unopposed construction of those terms and phrases as set forth in its principal brief.  (7/25/05 Watson Br. at §§ II.A-II.C, II.E-II.F, II.I, II.K-II.W)  At the very least, Unimed's failure to construe certain language addressed in Watson's principal brief constitutes a concession by Unimed that this language has a clear meaning.  See Eli Lilly & Co. v. Aradigm Corp., 376 F.3d 1352, 1360 (Fed. Cir. 2004).

B.     The Evidence Demonstrates that Watson Proposes the
       Proper Constructions of the Disputed Claim Language
       That Unimed Did Address in Its Principal Brief

       1.     The Phrase "Consisting Essentially Of" in Claims 1, 9, 10, 18, and 31

       The phrase "consisting essentially of" has a well-settled meaning in patent

law and does not appear to be in dispute.  As Unimed agrees, the phrase

"consisting essentially of" means that the invention necessarily includes the listed

ingredients and excludes unlisted ingredients that "materially affect the basic and

novel properties of the claimed invention."  (7/25/05 Unimed Br. at 13)  The issue

before the Court, therefore, is defining the "basic and novel properties" of the

claimed compositions.  See Kim v. Earthgrains Co., No. 01 C 3895, 2005 WL

66071, at *13-14 (N.D. Ill. Jan. 11, 2005) (determining the basic and novel

properties of the claimed invention as part of claim construction but not deciding

whether an unlisted ingredient had a material effect).

       As detailed in Watson's principal brief, the "basic and novel properties" of

the claimed compositions—i.e., the inventions to which the "consisting essentially

of" language attaches—are the physical properties of the composition and its drug-

delivery characteristics.  (7/25/05 Watson Br. at 26)  The physical properties

include viscosity, while the drug-delivery characteristics affect whether sufficient

#1305061 v1 - Reply to Pl Claim Constr Brief

amounts of the active ingredient can be supplied transdermally to achieve particular serum testosterone levels.  (7/25/05 Watson Br. at 26)

In contrast to Watson, however, Unimed identified no "basic and novel properties" in its principal brief.  (7/25/05 Unimed Br. at 13-18, 36-37)  Rather, without discussing any "basic and novel properties," as appropriate during claim construction, Unimed went straight to the questions whether water and sodium hydroxide, unlisted ingredients for certain claims, **affect** the "basic and novel properties" of the claimed compositions.  (7/25/05 Unimed Br. at 13-18, 36-37) Whether an unlisted ingredient affects the "basic and novel properties" of an invention, however, is a factual inquiry—as Unimed conceded—inappropriate for determination during claim construction.  (7/25/05 Unimed Br. at 17, 37); See PPG Indus. v. Guardian Indus. Corp., 156 F.3d 1351, 1355 (Fed. Cir. 1998); see infra § II.A, at pp. 20-26.

Thus, as explained above in section I.A, because Unimed failed to define any "basic and novel properties" in its principal brief, the Court should adopt Watson's position that the physical properties and the drug-delivery characteristics of the claimed compositions constitute the "basic and novel properties."

#1305061 v1 - Reply to Pl Claim Constr Brief

2.      The "Sodium Hydroxide" Limitation in Claim 9

(a)      The Term "Sodium Hydroxide" in Claim 9

Watson defines the term "sodium hydroxide" in its principal brief to mean the solid material with the chemical formula NaOH.  (7/25/05 Watson Br. at 28) Unimed agrees that "sodium hydroxide" means pure sodium hydroxide.  (7/25/05 Unimed Br. at 19)  Thus, the Court should adopt both Watson's and Unimed's definition that the term "sodium hydroxide" means a pure, solid material with the chemical formula NaOH.

(b)      The Phrase "About 3% Sodium Hydroxide" in Claim 9 as Issued

Watson defines "about 3% sodium hydroxide" as permitting a 10% variation from 3%, i.e., up to 3.3% sodium hydroxide.  (7/25/05 Watson Br. at 33-34) Unimed does not define what "about 3% sodium hydroxide" means in the '894 patent as issued.  As noted above, however, Unimed admits that "sodium hydroxide" means the pure, solid material with the chemical formula NaOH. (7/25/05 Unimed Br. at 19); see supra § I.B.2(a).  Thus, because Unimed failed to define the phrase "about 3% sodium hydroxide" in claim 9 as issued, the Court should adopt Watson's definition.

– 17 –

(c)     The Phrase "About 3% 0.1 N Sodium
Hydroxide" in Claim 9 as "Corrected"

Watson defines "about 3% 0.1 N sodium hydroxide" as permitting a 10%

variation from 3%, i.e., up to 3.3% 0.1 N sodium hydroxide.  (7/25/05 Watson Br.

at 31-32, 37-38)  Unimed disagrees that the term "about" permits a 10% variation.

(7/25/05 Unimed Br. at 34)  It instead contends that "about" means

"approximately," and more specifically, that the phrase "about 3% 0.1 N sodium

hydroxide" means "up to (but not including) 4% 0.1 N sodium hydroxide."

(7/25/05 Unimed Br. at 33)  That definition, "up to (but not including) 4% 0.1 N

sodium hydroxide," is 50% more than the amount of the entire 1% to 3% range and

is more than 30% greater than the upper limit of 3%.  Had Unimed intended that

claim 9's sodium hydroxide range stretch to 4%, it could have—and should have—

explicitly said so in the claim.

Furthermore, a person having ordinary skill in the art would not read claim 9

and believe that "about 3% 0.1 N sodium hydroxide" means "up to (but not

including) 4% 0.1 N sodium hydroxide" because the industry standard allows for a

variation of $\pm$ 10%.  (7/25/05 Watson Br. at 31-32)  And a skilled person would

know about the industry standard.  Accordingly, that person would not believe that

3% means any number up to 4%.  Thus, Unimed's attempt to stretch "about 3%"

up to 4% defeats one of the most basic functions of a patent—public notice—

– 18 –

because a person of ordinary skill in the art would not know that "about 3%" means up to 4%.  Cf. Smithkline Beecham Corp. v. Apotex Corp., 403 F.3d 1331, 1358-59 (Fed. Cir. 2005) (emphasizing the public-notice function of patents).

Moreover, Unimed's definition conflicts with its arguments that it intended all claims, including claim 9, to cover AndroGel®.  (7/25/05 Unimed Br. at 1, 16-17, 19, 28-29)  AndroGel® contains 4.72% 0.1 N sodium hydroxide.  (Ex. 1, col. 13, l. 32 [WA57])

Unimed defined "about 3% 0.1 N sodium hydroxide" for strategic litigation purposes: to encompass Watson's and Paddock's products, on the one hand, and to exclude AndroGel®, on the other.  That is, Unimed chose 4% as the upper limit for litigation-inspired purposes, i.e., to prove infringement while avoiding invalidity based on public use.

Therefore, the Court should reject Unimed's litigation-inspired definition and adopt Watson's ordinary definition.

II.   The Court Should Not Decide as Part of Claim
Construction the Infringement and Validity
<u>Issues That Unimed Raised in Its Principal Brief</u>

A.   The Determination Whether an Unlisted Ingredient Affects the
Basic and Novel Properties of a Claimed Invention Is a Factual
<u>Inquiry Not Properly Decided as Part of Claim Construction</u>

In its principal claim-construction brief, Unimed improperly requests that

the Court decide disputed factual questions, i.e., whether certain unlisted

ingredients materially affect the basic and novel properties of the claimed

compositions.  (7/25/05 Unimed Br. at 13-18)  For independent claims 1, 10, 18,

and 31, water constitutes the unlisted ingredient in controversy.  For independent

claim 31, sodium hydroxide constitutes an additional unlisted ingredient in

controversy.

In its principal claim-construction brief, Unimed did not identify any "basic

and novel properties" or point to anything in the '894 patent that indicates whether

water or sodium hydroxide would affect the "basic and novel properties" of the

product.  (7/25/05 Unimed Br. at 17-18, 36-37)  Unimed nevertheless argues,

without support, that water and sodium hydroxide do not affect the "basic and

novel properties" of the claimed compositions.  (7/25/05 Unimed Br. at 17-18, 36-

37)

Thus, Unimed raises two unlisted-ingredient issues: first, the nature and extent of water's effect on the claimed composition; second, the nature and extent of sodium hydroxide's effect on the claimed composition.  In PPG Industries, the Federal Circuit addressed whether such issues are legal questions appropriate for consideration by a district judge in connection with claim construction or factual questions for later resolution.  156 F.3d at 1351.  It held that the fact finder should decide whether an unlisted ingredient has a material effect on a claimed invention.  Id. at 1354-55.  In particular, the Federal Circuit ruled that the question whether an unlisted ingredient has a material effect constitutes an infringement determination rather than a claim-construction matter.  Id.

Citing AK Steel Corp. v. Sollac, 344 F.3d 1234 (Fed. Cir. 2003), Unimed urges the Court to now decide the two unlisted-ingredient issues that it has raised. (7/25/05 Unimed Br. at 18)  But Unimed misplaces its reliance on AK Steel.

In AK Steel, the patents in suit concerned hot-dip aluminum-coated stainless steel, and one of the independent claims defined the coating material as "consisting essentially of aluminum."  344 F.3d at 1236-37.  The accused product used a coating material containing aluminum and 8.0%-8.5% silicon.  Id. at 1238.  This presented the question whether 8.0%-8.5% silicon had a material effect on the coating material.  The patent specification expressly addressed that question by

#1305061 v1 - Reply to Pl Claim Constr Brief

explaining that the "silicon contents in the coating metal should not exceed about 0.5% . . . ." Id. at 1236, 1240.  Based on that explicit statement, the Federal Circuit determined as a matter of claim construction that the coating material limitation could not encompass more than 0.5% silicon.  Id. at 1239-40.  It then decided that no reasonable juror could find that the claim covered the accused product and affirmed a summary judgment of noninfringement.  Id. at 1240-41.

Thus, AK Steel represents an unusual case where the written description clearly and unambiguously limited the scope of a claimed invention.  See also SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc., 242 F.3d 1337 (Fed. Cir. 2001).

In AK Steel, the Federal Circuit remarked that the patent in PPG Industries said nothing about the unlisted ingredient at issue and nothing about what constitutes a material effect on the properties of the claimed product.  344 F.3d at 1240.  Seizing on that statement, Unimed asserts that Table 5 in the '894 patent unambiguously teaches that water and sodium hydroxide do not affect the "basic and novel properties" of the claimed compositions because water and sodium hydroxide are specified as ingredients in the preferred embodiment.  (7/25/05 Unimed Br. at 17-18, 36-37)  This interpretation misconstrues the holding of AK Steel because that case applies only to situations where the patent specification

#1305061 v1 - Reply to Pl Claim Constr Brief

clearly addresses the unlisted ingredient and its effect on the claimed product.  344 F.3d at 1240-41.

The facts in <u>AK Steel</u> differ markedly from the facts here.  The '894 patent identifies water and sodium hydroxide as ingredients in the preferred embodiment. (Ex. 1, col. 13, ll. 32-34 [WA57])  But the '894 patent does not discuss the nature and extent of water's effect on the claimed composition.  Nor does it discuss the nature and extent of sodium hydroxide's effect on the claimed composition.  The '894 patent, therefore, does not contain the words of manifest exclusion used in <u>AK Steel</u>.

In circumstances similar to those here, various district courts have followed <u>PPG Industries</u>.  <u>See</u> <u>Kim v. Earthgrains Co.</u>, No. 01 C 3895, 2005 WL 66071, at *13-14 (N.D. Ill. Jan. 11, 2005); <u>Pordy v. Land O'Lakes, Inc.</u>, No. 01 Civ. 0579 (JSR), 2002 WL 31571639, at *1 (S.D.N.Y. Nov. 18, 2002); <u>see also</u> <u>Bayer AG v. Sony Elecs., Inc.</u>, 229 F. Supp. 2d 332, 344 (D. Del. 2002).

In <u>Kim</u>, for example, the patent in suit concerned oxidizing agents used to make bread, and the "consisting essentially of" transition preceded a list of dough oxidizers.  2005 WL 66071, at *1, 3, 13.  During claim construction, the alleged infringer asked the district court to determine what oxidizers would materially affect the basic and novel properties of the claimed invention.  <u>Id.</u> at *13.  The

district court declined to rule on that issue, stating that the "question of whether the effect of a particular unlisted ingredient—such as chemical oxidizers—is material or immaterial is one of fact for the jury." Id. The district court also distinguished Kim from AK Steel because the patent in suit did not speak to the effect that other ingredients might have on the claimed invention nor explicitly exclude other oxidizers from the claimed invention. Id. Thus, the district court in Kim refrained from determining the materiality of an unlisted ingredient during claim construction.

Pordy also treated the issue of materiality of unlisted ingredients as a factual question for resolution after claim construction. 2002 WL 31571639, at *1. In Pordy, the patent in suit concerned a non-fat liquid creamer, where the unlisted ingredient added by the accused infringer was titanium dioxide. Id. During the claim-construction hearing, the district court defined the "basic and novel properties" of the claimed invention but left the question of whether titanium dioxide affects the "basic and novel properties" for the liability stage of the litigation. Id.

Thus, Unimed improperly requests that the Court determine factual questions as part of claim construction. What's more, those factual questions involve material, disputed facts. The accompanying declaration from Dr. Joel L.

Zatz, one of Watson's experts, demonstrates that water and sodium hydroxide have significant effects on the "basic and novel properties" of the claimed compositions. Dr. Zatz states that water would materially affect the basic characteristics of the compositions in claims 1-8 and 10-42 because water affects the rate and extent of testosterone delivery.  (Zatz Decl. ¶¶ 11-37)  Dr. Zatz explains that water alters: (1) the hydration state of the skin, (2) the partition coefficient of testosterone between the skin and the gel, (3) the evaporation rate of a gel after application, and (4) the skin temperature.  (Zatz Decl. ¶¶ 11-37)  Water also affects the physical characteristics of the claimed compositions because it may affect the ability of the claimed compositions to form a gel.  (Zatz Decl. ¶ 36)

Dr. Zatz further explains that sodium hydroxide would materially affect the basic characteristics of the compositions in claims 31-42 because the presence of sodium hydroxide, like water, may affect the ability of the claimed compositions to form a gel.  (Zatz Decl. ¶¶ 38-40)

Unimed has made no evidentiary showing to the contrary.  Accordingly, Watson respectfully requests that the Court decide the material-effect issues at the liability stage—the appropriate stage—of this litigation.

B.      The Validity of the Certificate of Correction Is Not a Claim Construction
        Issue, and Should Be Decided on a Separate Motion for Partial Summary
        Judgment that Watson Will File No Later than September 9, 2005

        Unimed also improperly requests that the Court evaluate the certificate of

correction's validity and applicability as part of claim construction.  (7/25/05

Unimed Br. at 19-29)  As noted in Watson's principal claim-construction brief,

Watson maintains that the certificate of correction, which issued after the

commencement of this lawsuit, is invalid and intends to submit a motion for partial

summary judgment on this issue.  (7/25/05 Watson Br. at 34)  That Unimed argued

the certificate of correction's validity and applicability in its principal claim-

construction brief surprised Watson.  Neither party identified this as a disputed

issue for purposes of claim-construction briefing.  (Ex. 41 [WA3668-69]; Ex. 42

[WA3670-71])  The validity of a certificate of correction is not an appropriate

issue for claim construction.  And Unimed has not made a proper motion in this

regard.

        While not properly a claim-construction issue, the certificate of correction's

validity does affect claim coverage and, as a result, the evidence relevant to the

infringement and validity issues.  Under the current case schedule, summary-

judgment motions are due no later than 20 days after the Court issues its claim-

construction order.  A decision on the certificate of correction's validity will

#1305061 v1 - Reply to Pl Claim Constr Brief

narrow the infringement and validity issues that will have to be addressed in those motions.  For these reasons, and because Unimed has raised this issue, Watson intends to file a motion for partial summary judgment on the question of the certificate of correction's validity no later than September 9, 2005.

Watson has filed a separate motion to strike the section of Unimed's principal claim-construction brief that concerns the certificate of correction.  If, however, the Court decides to view the arguments concerning the certificate of correction's validity in Unimed's claim-construction brief as a motion for summary judgment, then Watson respectfully requests that the Court set a briefing schedule and hold oral argument on the issue.

Regardless of the Court's decision on the certificate of correction's validity, it should still construe the claims both as issued and as "corrected."  That way, if a party appeals the ruling on the certificate of correction and the Federal Circuit reverses, the Court will not have to construe the claims again.  Indeed, when Watson and Unimed exchanged lists of claims terms to be construed, both parties included the sodium hydroxide limitations as issued and as "corrected."  (Ex. 41 [WA3668-69]; Ex. 42 [WA3670-71])  Watson construed the claim language both as issued and as "corrected."  (7/25/05 Watson Br. at 33-38)  Unimed did not.  (7/25/05 Unimed Br. at 30-35)  As explained above, Unimed has waived its right

– 27 –

to propose constructions for the terms and phrases that it failed to address in its principal brief.

## CONCLUSION

As explained above, Watson proposed proper constructions for the claim language in dispute.  Unimed, by failing to construe the vast majority of the disputed claim language, has now waived its right to propose constructions for that language.

Furthermore, Unimed has asked the Court to rule on two questions that are not part of claim construction: (1) what affects the basic and novel properties of the claimed compositions; and (2) whether the certificate of correction is valid and applicable to this litigation.  The determination of what affects the basic and novel properties of a claimed composition constitutes a factual inquiry not properly decided as part of claim construction.  Thus, Watson requests that the Court defer ruling on this issue until the liability stage of the litigation.

Similarly, Unimed inappropriately seeks a ruling on the certificate of correction's validity and applicability as part of claim construction.  Watson, instead, intends to file a partial summary-judgment motion on the certificate-of-

correction issue no later then September 9, 2005.  Thus, Watson requests that the

Court defer ruling on this issue until it is properly before the Court.

> MORRIS, MANNING & MARTIN, LLP
> Attorneys for Defendant
> Watson Pharmaceuticals, Inc.

Dated:  August 12, 2005

/s  David A. Rabin
_____
David A. Rabin
Georgia Bar No. 591469

1600 Atlanta Financial Center
3343 Peachtree Road, NE
Atlanta, Georgia 30326
Telephone: (404) 233-7000
Fax: (404) 365-9532

Of Counsel:
Barry S. White, Esq.
Steven M. Amundson, Esq.
John G. Taylor, Esq.
Joyce W. Luk, Esq.
Jennifer Chung, Esq.
FROMMER LAWRENCE & HAUG LLP
745 Fifth Avenue
New York, New York 10151
Telephone: (212) 588-0800
Fax: (212) 588-0500

#1305061 v1 - Reply to Pl Claim Constr Brief

## CERTIFICATE OF COMPLIANCE

I hereby certify, pursuant to Rule 7.1D of the Local Civil Rules of the

United States District Court for the Northern District of Georgia, that this brief has

been prepared with one of the font and point selections approved by the Court in

LR 5.1C.

/s  David A. Rabin
_____
David A. Rabin

#1305061 v1 - Reply to Pl Claim Constr Brief

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| UNIMED PHARMACEUTICALS, INC., | ) | |
| a Delaware corporation, and | ) | |
| LABORATORIES BESINS | ) | |
| ISCOVESCO, a Delaware corporation, | ) | |
| | ) | |
| Plaintiffs, | ) | CIVIL ACTION FILE |
| | ) | |
| v. | ) | NO. 1:03-CV-2501-TWT |
| | ) | |
| WATSON PHARMACEUTICALS, INC., | ) | |
| a Nevada corporation, | ) | |
| | ) | |
| Defendant. | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that on August 12, 2005, a true and correct of the foregoing

document, "WATSON'S REPLY TO PLAINTIFFS' MEMORANDUM ON

CLAIM CONSTRUCTION," was filed electronically via CM/ECF in the United

States District Court for the Northern District of Georgia, with notice of same

being electronically served by the Court, addressed to:

Jerry B. Blackstock, Esq.
Hunton & Williams LLP
4100 Bank of America Plaza
600 Peachtree Street NE
Atlanta, Georgia 30308

#1305061 v1 - Reply to Pl Claim Constr Brief

James R. Ferguson, Esq.
Mayer, Brown, Rowe & Maw LLP
71 South Wacker Drive
Chicago, Illinois 60606


/s  David A. Rabin
_____
David A. Rabin
Georgia Bar No. 591469

MORRIS, MANNING & MARTIN, LLP
1600 Atlanta Financial Center
3343 Peachtree Road, N.E.
Atlanta, Georgia 30326-1044
(404) 233-7000

#1305061 v1 - Reply to Pl Claim Constr Brief