# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | |
|---|---|
| **UNIMED PHARMACEUTICALS, INC.,** a Delaware corporation, and **LABORATORIES BESINS ISCOVESCO,** a Delaware corporation, ) ) ) ) ) **Plaintiffs,** ) ) **v.** ) ) **WATSON PHARMACEUTICALS, INC.,** a Nevada corporation, and **PADDOCK LABORATORIES, INC.,** a Minnesota corporation, ) ) ) ) ) ) **Defendants.** ) | **Nos.  1:03-CV-2501 TWT** **1:03-CV-2503 TWT** |

## PLAINTIFFS' CONSOLIDATED RESPONSE TO DEFENDANTS WATSON'S AND PADDOCK'S STATEMENTS OF MATERIAL FACTS AS TO WHICH THERE ARE NO GENUINE ISSUES TO BE TRIED

In accordance with local Civil Rule 56.1(b)(2), Respondents Unimed Pharmaceuticals, Inc. and Laboratories Besins Iscovesco, (hereinafter "Unimed") hereby file their Consolidated Response to Watson Pharmaceuticals, Inc.'s Statement Of Material Facts As To Which There Are No Genuine Issues To Be Tried and Paddock's Statement Of Material Facts As To Which There Are No Genuine Issues To Be Tried.

In response to Watson's Statement of Material Facts As To Which There Are No Genuine Issues To Be Tried contained in numbered paragraphs 1-27, Unimed responds as follows:

**Paragraph 1 States:**     U.S. Patent No. 6,503,894 ("the '894 patent") issued on January 7, 2003.  (Ex. 1 at 1 [WA1]).

**RESPONSE:**

Admitted.

**Paragraph 2 States:**     Plaintiffs Unimed Pharmaceuticals, Inc. and Laboratories Besins Iscovesco (collectively "Unimed") are the assignees of the '894 patent.  (Ex. 1 at 1 [WA1]).

**RESPONSE:**

Admitted.

**Paragraph 3 States:**     As issued, claims 1, 10, and 18 define testosterone compositions including "about 1% to about 5% sodium hydroxide," while claim 9 defines a hydroalcoholic gel including "about 1% to about 3% sodium hydroxide." The claimed percentages are relative to the composition's weight.  (Ex. 2, col. 49, ll. 59-67; col. 50, ll. 1-2, 27-48; col. 51, ll. 1-20 [WA79-81]).

**RESPONSE:**

Denied.  Claim 1 is directed to a pharmaceutical composition.  (Ex. A, col. 49, l. 59).  Claim 10 is directed to a unit dose packet and pharmaceutical composition.  (Ex. A, col. 50, ll. 38-40).  Claim 18 is directed to a method of administering an active agent to a human including providing a pharmaceutical composition.  (Ex. A, col. 51, ll. 1-3).

2

**Paragraph 4 States:**      Unimed filed the application for the '894 patent on August 30, 2000.  (Ex. 3 [WA246-357]).

**RESPONSE:**

Admitted.

**Paragraph 5 States:**      None of the application's claims recited a range for sodium hydroxide or even mentioned this component.  (Ex. 3 [WA323-327])

**RESPONSE:**

Denied.  Unimed admits that the originally filed claims did not recite an explicit range for sodium hydroxide or mention this component, however, applicants added new claims or amended original claims which included explicit references to sodium hydroxide and ranges.  (Ex. I, at UCFH 2626-2634; Ex. X at UCFH 2578, 2580).  Moreover, the original claims were open ended (*i.e.*, used the introductory phrase "comprising") and therefore could include sodium hydroxide.  (Ex. Y at UCFH0080-84).

**Paragraph 6 States:**      The application's written description included Table 5, which detailed the composition of AndroGel® as one embodiment of the invention.  (Ex. 3 at 26 [WA277]).

**RESPONSE:**

Admitted.

**Paragraph 7 States:**      The same Table 5 that appears in the application also appears in the issued patent.  (Ex. 1, col. 13, ll. 23-35 [WA57])

**RESPONSE:**

Admitted.

**Paragraph 8 States:**     According to Table 5, one of the ingredients in 100 grams of AndroGel® is 4.72 grams of 0.1 N sodium hydroxide.  (Ex. 1, col. 13, 1.32 [WA57]); Ex. 3 at 26 [WA2777]).

**RESPONSE:**

Admitted.

**Paragraph 9 States:**     The paragraph following Table 5 in the '894 patent application and the issued patent states:

> One skilled in the art will appreciate that the constituents of this formulation may be varied in amounts yet continue to be within the spirit and scope of the present invention.  For example, the composition may contain about 0.1 to about 10.0 g of testosterone, about 0.1 to about 5.0 g Carbopol, about 0.1 to about 5.0 g isopropyl myristate, and about 30.0 to about 98.0 g ethanol.

(Ex. 1, col. 13, ll. 36-43 [WA57]; Ex. 3 at 26 [WA277]).

**RESPONSE:**

Admitted.

**Paragraph 10 States:**     On October 29, 2001, Unimed filed an amendment and response to an Office action that canceled certain claims and added others. (Ex. 3 [WA429-451]).

**RESPONSE:**

Admitted.  But, note that the date of the Amendment is October 19, 2001.

**Paragraph 11 States:**     New dependent claims 45 and 64 in the October 29, 2001 amendment and response recited sodium hydroxide but specified no range for this component (Ex. 3 at 4, 6 [WA432-434]).

**RESPONSE:**

Admitted.  But, note that the date of the Amendment is October 19, 2001.

**Paragraph 12 States:**     The remarks in the October 29, 2001 amendment and response did not mention dependent claims 45 and 64, or sodium hydroxide. (Ex. 3 at 4, 6.  [WA432-434]).

**RESPONSE:**

Admitted.  But, note that the date of the Amendment is October 19, 2001.

**Paragraph 13 States:**     On December 21, 2001, Unimed filed a supplemental amendment.  (Ex. 3 [WA480-494]).

**RESPONSE:**

Admitted.

**Paragraph 14 States:**     Among other things, the December 21, 2001 supplemental amendment canceled dependent claims 45 and 64 without prejudice and added new claims.  (Ex. 3 at 1, 6-8 [WA480-487]).

**RESPONSE:**

Admitted.

**Paragraph 15 States:**     The new claims in the December 21, 2001 supplemental amendment did not mention sodium hydroxide, nor did the remarks (Ex. 3 [WA480-494]).

**RESPONSE:**

Admitted.

**Paragraph 16 States:**     On February 8, 2002, Unimed filed a second supplemental amendment.  (Ex. 3 [WA496-541]).

**RESPONSE:**

Admitted.

**Paragraph 17 States:**     Among other things, the February 8, 2002 second supplemental amendment changed all independent claims but one (nos. 47, 61, 78, and 97 [new] but not 110 [new]) to recite ranges for sodium hydroxide, i.e., "about 1% to about 5%" and "about 1% to about 3%."  (Ex. 3 at 15-19 [WA510-514]). As support for these ranges, Unimed cited Table 5 and stated, " Note that 4.72g of 0.1N NaOH = about 1.8 NaOH in 100g of gel, or about 1.l8%"  (Ex. 3 at 26 [WA521]).

**RESPONSE:**

Admitted that the February 8, 2002 second supplemental amendment

changed all independent claims but not claim 110.  Admitted that Unimed cited

Table 5 as support for the ranges.  Unimed also cited additional portions of the

specification as support for the ranges.  (Ex. I, UCFH 2637).  Denied that the note

is provided as support for the ranges as the note relates only to a particular

concentration, not a range, was in error, and consequently is not material.  Ex. W,

pgs. 181-186).

**Paragraph 18 States:**     The remarks in the February 8, 2002 second

supplemental amendment did not otherwise mention sodium hydroxide.  (Ex. 3 at

24-27 [WA519-522]).

**RESPONSE:**

6

Object as immaterial.

**Paragraph 18 States:**     Unimed filed additional supplemental responses and amendments after February 8, 2002, but none of them changed the sodium hydroxide limitations or even mentioned sodium hydroxide.  (Ex. 3 [WA615-21, WA643-47]).

**RESPONSE:**

Admitted.

**Paragraph 19 States:**     On July 24, 2002, Unimed filed another supplemental amendment.  Although the claims reciting sodium hydroxide were amended, the sodium hydroxide limitations themselves were not.  (Ex. 3 [WA615-621]).

**RESPONSE:**

Admitted.

**Paragraph 20 States:**     On August 1, 2002, Unimed filed another supplemental amendment.  Although claims reciting sodium hydroxide were amended, the sodium hydroxide limitations themselves were not.  (Ex. 3 [WA643-647]).

**RESPONSE:**

Admitted.

**Paragraph 21 States:**     None of the interview summaries or Office actions in the prosecution history ever mentioned sodium hydroxide, including those after February 8, 2002.  (Ex. 3 [WA409-418, WA467, WA562, WA563, WA587-594, WA610, WA639]).

**RESPONSE:**

Denied.  The February 8, 2002 Supplemental Amendment mentioned

sodium hydroxide. (Ex. I at 15-23, 26)  Sodium hydroxide was also mentioned in

the July 24, 2002 Supplemental Amendment.  (Ex. Z at WA615-21).

**Paragraph 22 States:**     On June 12, 2003 – more than five months after
the '894 patent issued – Unimed filed a request for a certificate of correction to,
among other things, change claims 1, 9, 10, and 18 by inserting "0.1 N' before the
term "sodium hydroxide."  (Ex. 3 [WA705-713]).

**RESPONSE:**

Admitted.

**Paragraph 23 States:**     Unimed requested the "0.1 N" corrections under
37 C.F.R. § 1.323, which is the implementing regulation for 35 U.S.C. § 255.  (Ex.
3 [WA707-708]).

**RESPONSE:**

Admitted.

**Paragraph 24 States:**     Unimed supported its request for a certificate of
correction by stating that the "mistakes were made in good faith and that the proper
language is contained throughout the specification, see, for example, column 13,
Table 5 ('0.1 N NaOH' (sodium hydroxide))."  (Ex. 3 [WA707]).

**RESPONSE:**

Admitted.

**Paragraph 25 States:**     Unimed also stated in its request for a certificate of
correction that "the above-proposed correction would not introduce any new matter
and would not alter the substance of the patent in any way that would necessitate
reevaluation by an Examiner."  (Ex. 3 [WA707]).

**RESPONSE:**

Admitted.

**Paragraph 26 States:**     On December 16, 2003, the Patent Office issued the requested certificate of correction, which, among other things, added the term "0.1 N" before the term "sodium hydroxide" in claims 1, 9, 10, and 18.  (Ex. 3 [WA719-720]).

**RESPONSE:**

Admitted.

In response to Paddock's Statement of Material Facts As To Which There

Are No Genuine Issues To Be Tried contained in numbered paragraphs 1-44,

Unimed responds as follows:

**Paragraph 1 States:**     The original patent application that resulted in U.S. Patent No. 6,503,894 (the "Patent or "'894" patent) patent was filed on August 30, 2000.  App. C, Tabs. 3-7.

**RESPONSE:**

Admitted.

**Paragraph 2 States:**     None of the original claims recited sodium hydroxide as an ingredient in the claimed composition.  *See* App. C, Tab 3.

**RESPONSE:**

Admitted.  But, note that the original claims were open-ended and therefore

did not preclude sodium hydroxide as an ingredient in the claimed composition.

(Ex. Y, UCFH 0080-0084).

**Paragraph 3 States:**      Nowhere in the specification (App. C, Tab 4)
(whether as originally filed or as in the issued patent) was there a range provided
for the amount sodium hydroxide.

**RESPONSE:**

Denied.  The range for the sodium hydroxide was provided in the claims

which are part of the specification.  In addition, the range for sodium hydroxide

was not required to be listed as the range of sodium hydroxide was readily

understood to one skilled in the art by virtue of the amount of carbomer included in

the claims.  (Ex. E at ¶ 74; Ex. P at ¶¶ 26 to 42 ).

**Paragraph 4 States:**      The only reference to sodium hydroxide in the
specification is in Table 5 (App. A, col. 13, App. C, Tab 4, FW126) which is the
formula for the only specific composition described in the specification, namely
Androgel®.

**RESPONSE:**

Admitted.

**Paragraph 5 States:**     Table 5 reads:

TABLE 5

---

Composition of AndroGel®

SUBSTANCE                              AMOUNT (w/w)
                                       PER 100g OF GEL

---

Testosterone                           1.0g
Carbopol 980                           0.90g
Isopropyl myristate                    0.50g
0.1 N NaOH                             4.72g
Ethanol (95% w/w)                      72.5g*
Purified water (qsf)                   100g

---

*corresponding to 67 g of ethanol.

**RESPONSE:**

Admitted.

**Paragraph 6 States:**     "NaOH" is the chemical name for pure sodium hydroxide, which exists in solid form.  App. L ¶ 45 (Allen 4/22/05 Expert Report).

**RESPONSE:**

Admitted.

**Paragraph 7 States:**     In the expression "0.1 N", N is an abbreviation for the term normal which in this context refers to a solution having a concentration of one gram equivalent of solute per liter.  *Id.*; *see also*, the relevant definition of normal at Merriam-Webster Online.  Therefore, in this context, the term "0.1 N NaOH" refers to a particular normality or concentration of sodium hydroxide in solution.

11

**RESPONSE:**

Admitted.

**Paragraph 8 States:**      Since none of the original claims contained a reference to sodium hydroxide, all later claims which set forth such a reference were added by amendment.

**RESPONSE:**

Admitted.  But, note that the original claims were open-ended and therefore

did not preclude sodium hydroxide as an ingredient in the claimed composition.

(Ex. Y, UCFH 0080-0084).

**Paragraph 9 States:**      On October 19, 2001, applicants filed an Amendment and Response to June 19, 2001 Office Action that, among other things, added two new dependent claims, 45 and 63, that mark the first appearance of a reference to sodium hydroxide in any of the proposed claims.

**RESPONSE:**

Admitted.

**Paragraph 10 States:**      Applicants did not comment on these claims in the Remarks section of its submission.  App. C, Tab 14 (new claims 45 and 64 at FW318 and FW320).

**RESPONSE:**

Admitted.

**Paragraph 11 States:**      In each of these new claims, the term sodium hydroxide appears by itself without any indication of a range or a modifier, such as 0.1 N or any other indicator of a normality or concentration or that the sodium hydroxide referred to is in solution; e.g, proposed claim 45 reads: "The

composition as recited in Claim 1 further consisting essentially of sodium hydroxide."

**RESPONSE:**

Admitted.

**Paragraph 12 States:**     In a Supplemental Amendment, dated December 21, 2001, various claims were added and others cancelled.

**RESPONSE:**

Admitted.

**Paragraph 13 States:**     Among those cancelled without comment were proposed claims 45 and 64 which had first introduced a reference to sodium hydroxide in the proposed claims.  App. C, Tab 19, FW374-390.

**RESPONSE:**

Admitted.

**Paragraph 14 States:**     Upon the cancellation of those claims by this amendment, none of the proposed claims contained a reference to sodium hydroxide until the February 2002 amendment discussed below.

**RESPONSE:**

Admitted.

**Paragraph 15 States:**     Claims referring to a range of sodium hydroxide were first introduced through an amendment in February 2002, titled Supplemental Amendment II (February 8, 2002).  App. C, Tab 21 at FW 394-439. *See e.g*. proposed claims 47, 61, 78, and 97 at App. C., Tab 21at FW408-12.

**RESPONSE:**

Admitted.

**Paragraph 16 States:**     These proposed claims later became claims 1, 9, 10 and 18 of the issued patent.

**RESPONSE:**

Admitted.

**Paragraph 17 States:**     These proposed claims set forth one of two ranges for a proportionate amount of sodium hydroxide in the claimed composition: either about 1% to 5% (*e.g.*, proposed claims 47, 78 and 97) or about 1% to 3% (*e.g.*, proposed claim 61).  *Id.*

**RESPONSE:**

Admitted.

**Paragraph 18 States:**     None of these proposed claims referencing sodium hydroxide contain the modifier 0.1 N.  *Id.*

**RESPONSE:**

Admitted.

**Paragraph 19 States:**     No point during the prosecution of the application did any claim reciting sodium hydroxide contain the modifier 0.1 N or any other modifier or indication that the recited amount of sodium hydroxide was in solution or that it was anything but the pure, solid chemical compound NaOH.

**RESPONSE:**

Denied.  Table 5 in the specification, which is the only reference to sodium hydroxide in the written description of the preferred embodiment, specifically indicated that the sodium hydroxide was in solution at a concentration of 0.1 N. (Ex. Y at UCFH 0034).  Unimed further objects on the basis that Paddock's

purported fact is not supported by a citation to evidence proving the fact (LR

56.1(b)).

**Paragraph 20 States:**   To support these new claims reciting not only
sodium hydroxide but also these ranges of amounts of sodium hydroxide, the
applicants presented, in the same Supplemental Amendment II, a calculation
purporting to convert the amount of sodium hydroxide in Androgel, when
expressed in terms of 0.1 N, into the equivalent amount of pure sodium hydroxide,
as shown in the following excerpt from the pertinent table in that submission:

| Claim | Support in Specification |
|---|---|
| 47-48, 51-52, 54-57 | pp. 23-27; Table 5, p. 26.  Note that  4.72g of 0.1N NaOH=about 1.8g NaOH in 100g of gel, or about 1.8% |

App. C, Tab 21 at FW419.

**RESPONSE:**

Admitted that Unimed cited Table 5 as support for the ranges.  Unimed also

cited additional portions of the specification as support for the ranges.  (Ex. I,

UCFH 2637).  Denied that the note is provided as support for the ranges as the note

relates only to a particular concentration, not a range, was in error, and

consequently is not material.  (Ex. W at pgs. 181-186).

**Paragraph 21 States:**   Other portions of this table also point to Table 5, p.
26 (*i.e.*, of the original specification) as supporting the other proposed claims (61,
78 and 97) to which a reference to sodium hydroxide was being added by this
amendment.  *Id.*

**RESPONSE:**

Admitted.

**Paragraph 22 States:**    The highlighted portion in the excerpted table above purports to show the conversion of the amount of sodium hydroxide in Androgel® (as shown in Table 5 of the specification as originally filed and as issued), *i.e.*, 4.72 grams of 0.1 N NaOH, to an amount of pure (solid) NaOH:  a value which is given as 1.8%.

**RESPONSE:**

Denied.  There is no basis for the statement that the calculation intended to show a conversion from sodium hydroxide solution to pure sodium hydroxide and that conclusion is merely attorney argument.  Unimed therefore objects on the basis that Paddock's purported fact is not supported by a citation to evidence proving the fact (LR 56.1(b)), and is merely attorney argument.

**Paragraph 23 States:**    Proposed claim 61 (later issued as claim 9) contains the narrowest ranges of the other ingredients in the claimed composition as compared to the other independent claims and is drawn more closely than any of the other claims around the proportional ingredient amounts given for Androgel® in Table 5 of the specification.

**RESPONSE:**

Denied.  Unimed further objects on the basis that Paddock's purported fact is not supported by a citation to evidence proving the fact (LR 56.1(b)), and is merely attorney argument.

**Paragraph 24 States:**    These proposed claims recite amounts of pure (solid) sodium hydroxide.

16

**RESPONSE:**

Admit that the claims recite pure sodium hydroxide in error, but were

understood by those skilled in the art to be sodium hydroxide in solution.  (Ex. L at

¶ 3; Ex. M at ¶ 3).

**Paragraph 25 States:**    The conversion calculation shown above is in fact
mathematically incorrect; it is off by two decimal places, a factor of 100.  It should
have said 0.018 g NaOH is equivalent to 4.72 g of NaOH, instead of 1.8 g.  *See* Pl.
7/25/05 Memorandum on Claim Construction at 29.

**RESPONSE:**

Denied.  The Statement of Fact, as recited by Paddock, is in error as it does

not include the 0.1 N concentration and therefore does not accurately reflect

Plaintiffs' memo on claim construction.

**Paragraph 26 States:**    0.1 N sodium hydroxide means an aqueous
solution containing 0.1 equivalent weight of NaOH per liter of solution.  App. L
¶ 46 (4/22/05 Allen Expert Report).

**RESPONSE:**

Admitted.

**Paragraph 27 States:**    The equivalent weight of NaOH is 40 g.  App. L
¶ 46 (4/22/05 Allen Expert Report).

**RESPONSE:**

Admitted.

**Paragraph 28 States:**     A 0.1 N NaOH solution has 0.1 equivalent weight of NaOH per liter of solution, or 4 g of NaOH (0.1 x 40) per liter.  App. L ¶ 46 (4/22/05 Allen Expert Report).

**RESPONSE:**

Admitted.

**Paragraph 29 States:**     Assuming a density of water of 1 g/ml, a liter of the solution weighs approximately 1000 g. App.L ¶ 46 (4/22/05 Allen Expert Report).

**RESPONSE:**

Admitted.

**Paragraph 30 States:**     Thus, 1 g of 0.1 N NaOH solution contains 0.004 g NaOH (4/1000).  App. L ¶ 46 (4/22/05 Allen Expert Report).

**RESPONSE:**

Admitted.

**Paragraph 31 States:**     Mathematically, applying the term 0.1 N to the incorrect result of the conversion calculation does not correct it; the only way to correct it is by moving the decimal point on the incorrect result of 1.8 g NaOH two places to the left so as to give the correct conversion of 0.018 g NaOH.

**RESPONSE:**

Object as immaterial, the Certificate of Correction was directed to a

correction of an obvious error in the claims, not to an error in a calculation in the

prosecution history.

**Paragraph 32 States:**     There is nothing in the prosecution history to suggest that the applicants intended all of the claims of the patent to cover Androgel®, except claim 9 which has the narrowest ranges of relative proportions

of ingredients of all the claims and is drawn more closely to ingredient proportions of Androgel® than any of the other claims.

**RESPONSE:**

Unimed objects on the basis that Paddock's purported fact is not supported by a citation to evidence proving the fact (LR 56.1(b)), and is merely attorney argument.  Unimed further objects to the purported fact as immaterial as applicant's intent as to whether all claims were intended to cover Androgel is irrelevant to a determination of whether the Certificate of Correction was valid.

**Paragraph 33 States:**    Between the February 2002 Amendment that introduced sodium hydroxide elements in the claims and the January 7, 2003 issuance of the patent, applicants did not seek to correct what plaintiffs' now contend was an obvious mistake in the claims referencing sodium hydroxide.

**RESPONSE:**

Admitted.

**Paragraph 34 States:**    It was not until, June 12, 2003, five months after the patent had issued that applicants sought a certificate of correction to, inter alia, add 0.1 N before sodium hydroxide in the claims.  App. C, Tab 40.

**RESPONSE:**

Admitted.

**Paragraph 35 States:**    Thus, following the February 2002 Amendment that introduced sodium hydroxide elements in the claims, claims reciting sodium hydroxide were amended on two separate occasions.  *See* App. C at 558-67; 569-74.  The applicants took neither opportunity to seek to amend the claims to insert "0.1 N."  *Id.*

**RESPONSE:**

Admitted.

**Paragraph 36 States:**     Prior to issuance of the patent, applicants and their patent counsel, continued to provide the Patent Office with responses to office actions, miscellaneous letters, information disclosure statements, and sworn declarations.  *See* App. C at FW 441-574.

**RESPONSE:**

Admitted.

**Paragraph 37 States:**     They conducted three more interviews with the examiner.  App. C at FW 461, 531, 541.

**RESPONSE:**

Admitted.

**Paragraph 38 States:**     In requesting a certificate of correction, applicants and their patent counsel represented that:

> the mistakes were made in good faith and that the proper language is contained throughout the specification, see, for example, column 13, Table 5 ("0.1 N NaOH") (sodium hydroxide)).  As such, the correction does not involve such changes in the patent that would constitute new matter of would require reexamination.  [App. C, Tab 40 at FW596]

**RESPONSE:**

Admitted.

**Paragraph 39 States:**     Applicants did not present the Patent Office with any facts or arguments to support their assertion that the "mistake" with respect to sodium hydroxide was made in good faith.  App. C., Tab 40.

**RESPONSE:**

Denied.  As part of their support for the fact that the mistake was made in good faith, applicants specifically identified the formulation for the preferred embodiment set forth in the specification, which included sodium hydroxide present in solution at a concentration of 0.1 N.  (Ex. O at p.3).

**Paragraph 40 States:**     The Certificate of Correction was issued on December 16, 2003.  App. B.

**RESPONSE:**

Admitted.

**Paragraph 41 States:**     Table 5 (at col. 13) of the patent expresses the amount of sodium hydroxide used in formulation Androgel® in terms of 0.1 N NaOH.  There is no scientific reason why that concentration, specifically, why that "normality", must be used in formulating the composition broadly recited in the claims.

**RESPONSE:**

Admitted that Table 5 expresses the amount of sodium hydroxide used in Androgel® in terms of 0.1 N NaOH.  Admitted that there is no scientific reason why an infringing formulation or its equivalent could use another "normality" that is functionally equivalent to the amount of sodium hydroxide recited in the corrected claims.  However, Unimed objects to the statement as immaterial because the question of whether other normalities may be used to make the formulation is not relevant to the inquiry concerning how the language in the

claims (*i.e.* "about 1% to about 5%" or "about 1% to 3%") should appropriately be

corrected and whether that correction would have been "clearly evident" to a

skilled artisan based on the specification or prosecution history.

   **Paragraph 42 States:**   Plaintiffs' experts agree that one could use many various normalities of solution of sodium hydroxide to produce the desired result, e.g., 0.2 N, 0.3 N or 0.4 N among many.  Plaintiffs' expert Dr. Weiner explained that "setting forth the amount of sodium hydroxide used in the claimed formulation as a 0.1 N solution is just one of an infinite number of ways that the amount of sodium hydroxide claimed in the '894 Patent could be expressed."  Weiner Expert Report, App. X ¶ 45.  *See* Barr Dep. Tr., App. DD at 66; Bowman Dep. Tr., App. EE at 150-51, 155, 169-70.  *See* also Allen Rebuttal Report, App. M, ¶ 9; Allen Reply Report. N, ¶ 9.

**RESPONSE:**

Admitted.  However, object as immaterial because the question of whether other normalities may be used to make the formulation is not relevant to the inquiry concerning how the language in the claims (i.e. "about 1% to about 5%" or "about 1% to 3%") should appropriately be corrected and whether that correction would have been "clearly evident" based on the specification or prosecution history.  Furthermore, Dr. Weiner stated that the obvious correction was to add 0.1 N before sodium hydroxide in the claims.  (Ex. L, ¶ 10).  Unimed further objects to the statement and defendants' reliance on Dr. Weiner's deposition testimony because when viewed in context, Dr. Weiner was clearly discussing the issue of infringement, and not the clearly evident correction to the claims.

**Paragraph 43 States:**   On July 11, 2003, Plaintiffs received notice that Paddock had filed an ANDA on a generic version of AndroGel®.  Complaint ¶ 18.

**RESPONSE:**

Admitted.

**Paragraph 44 States:**   Plaintiffs instituted this lawsuit on August 21, 2003.  The Certificate of Correction was issued on December 16, 2003.  App. B.

**RESPONSE:**

Admitted.

Dated:   October 17, 2005          Respectfully submitted,

UNIMED PHARMACEUTICALS, INC. and
LABORATORIES BESINS ISCOVESCO


By: /s/  Robert S. Rigg
      One of their attorneys

Jerry B. Blackstock  Georgia Bar No. 061000
HUNTON & WILLIAMS
4100 Bank of America Plaza
600 Peachtree Street NE
Atlanta, Georgia 30308-2216
Telephone:  (404) 888-4000
Facsimile:  (404) 888-4190

James R. Ferguson
Robert S. Rigg
MAYER, BROWN, ROWE & MAW LLP
71 South Wacker Drive
Chicago, Illinois 60606
Telephone:  (312) 782-0600
Facsimile:  (312) 701-7711

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| UNIMED PHARMACEUTICALS, INC., a Delaware corporation, and LABORATORIES BESINS ISCOVESCO, a Delaware corporation, Plaintiffs, | ) ) ) ) ) ) | |
| v. | ) ) | Nos.  1:03-CV-2501 TWT 1:03-CV-2503 TWT |
| WATSON PHARMACEUTICALS, INC., a Nevada corporation, and PADDOCK LABORATORIES, INC., a Minnesota corporation, Defendants. | ) ) ) ) ) | |

## CERTIFICATE OF SERVICE

I hereby certify that on October 17, 2005, a true and correct copy of the foregoing document was filed electronically via CM/ECF in the United States District Court for the Northern District of Georgia, with notice of same being electronically served by the Court, addressed to:

David A. Rabin
Morris, Manning & Martin LLP
1600 Atlanta Financial Center
3343 Peachtree Road, N.E.
Atlanta, Georgia 30326-1044
***Attorneys for the Defendant***
***Watson Pharmaceuticals, Inc.***

Barry S. White
Frommer, Lawrence & Haug LLP
745 Fifth Avenue
New York, New York  10151
***Attorneys for the Defendant***
***Watson Pharmaceuticals, Inc.***

Mark G. Trigg
Ernest L. Greer
Hayden Pace
Greenberg Traurig, LLP
The Forum Suite 400
3290 Northside Parkway, N.W.
Atlanta, Georgia 30327
***Attorneys for the Defendant***
***Paddock Laboratories, Inc.***

Albert L. Jacobs, Jr.
Daniel A. Ladow
Greenberg Traurig, LLP
MetLife Building
200 Park Avenue
New York, NY 10166
***Attorneys for the Defendant***
***Paddock Laboratories, Inc.***

Dated:  October 17, 2005            /s/  Robert S. Rigg

1301380