**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| UNIMED PHARMACEUTICALS, INC., a Delaware corporation, and LABORATORIES BESINS ISCOVESCO, a Delaware corporation, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Nos.   1:03-CV-2501 TWT 1:03-CV-2503 TWT |
| WATSON PHARMACEUTICALS, INC., a Nevada corporation, and PADDOCK LABORATORIES, INC., a Minnesota corporation, | ) ) ) ) ) | |
| Defendants. | ) ) | |

**PLAINTIFFS' CONSOLIDATED RESPONSE TO DEFENDANTS
WATSON'S AND PADDOCK'S STATEMENTS OF MATERIAL FACTS
AS TO WHICH THERE ARE NO GENUINE ISSUES TO BE TRIED
REGARDING INVALIDITY OF CLAIMS 1-30 OF THE '894 PATENT
LACKING A WRITTEN DESCRIPTION UNDER 35 U.S.C. § 112**

In accordance with Local Civil Rule 56.1b(2), Respondents Unimed

Pharmaceuticals, Inc. and Laboratories Besins Iscovesco, (hereinafter "Unimed")

hereby file their Consolidated Response To Defendants Watson's And Paddock's

Statements Of Material Facts As To Which There Are No Genuine Issues To Be

Tried Regarding Invalidity Of Claims 1-30 Of the '894 Patent Lacking A Written

Description Under 35 U.S.C. § 112.

In response to Watson's Statement Of Material Facts As To Which There Are No Genuine Issues To Be Tried contained in paragraphs 1-27, Unimed responds as follows:

**Paragraph 1 States:**     U.S. Patent No. 6,503,894 ("the '894 patent") issued on January 7, 2003. (Ex. 1 at 1 [WA1])

**RESPONSE:**

Admitted.

**Paragraph 2 States:**     Plaintiffs Unimed Pharmaceuticals, Inc. and Laboratories Besins Iscovesco (collectively "Unimed") own the '894 patent by assignment. (Ex. 1 at 1 [WA1])

**RESPONSE:**

Admitted.

**Paragraph 3 States:**     As issued, claims 1, 10, and 18 define testosterone compositions containing "about 1% to about 5% sodium hydroxide," while claim 9 defines a hydroalcoholic gel containing "about 1% to about 3% sodium hydroxide." The claimed percentages are relative to the composition's weight. (Ex. 1, col. 49, 11. 59-67; col. 50, ll. 1-2, 27-48; col. 51, ll. 1-20 [WA75-76])

**RESPONSE:**

Denied.  Claim 1 is directed to a pharmaceutical composition.  (Ex. A, col. 49, l. 59).[1]   Claim 10 is directed to a unit dose packet and pharmaceutical composition.  (Ex. A, col. 50, ll. 38-40).   Claim 18 is directed to a method of administering an active agent to a human including providing a pharmaceutical composition.  (Ex. A, col. 51, ll. 1-3).

**Paragraph 4 States:**    Unimed   filed   U.S.   application   serial   no. 09/651,777 for the '894 patent (the "application") on August 30, 2000. (Ex. 3 [WA246-357])

**RESPONSE:**

Admitted.

**Paragraph 5 States:**    None of the application's claims recited a range for sodium hydroxide or even mentioned this component. (Ex. 3 [WA323-327])

**RESPONSE:**

Denied.  Unimed admits that the originally filed claims did not recite an explicit range for sodium hydroxide or mention this component, however, applicants added new claims or amended original claims which included explicit references to sodium hydroxide and ranges.  (Ex. I, at UCFH 2626-2634; Ex. X at

---

[1]    This response incorporates by reference the exhibits submitted in Plaintiffs' Consolidated Response to Defendants' earlier motions for summary judgment on the validity of the Certificate of  Correction.  This response will refer to the exhibits using the same letters as Plaintiffs' earlier Response.

UCFH 2578, 2580).  Moreover, the original claims were open ended (*i.e.*, used the introductory phrase "comprising") and therefore could include sodium hydroxide. (Ex. Y at UCFH0080-84).

**Paragraph 6 States:**   The application's written description included Table 5, which purportedly detailed the composition of AndroGel® as one embodiment of the invention. (Ex. 3 at 26 [WA277])

**RESPONSE:**

Admitted.

**Paragraph 7 States:**   The same Table 5 that appears in the application also appears in the issued patent. (Ex. 1, col. 13, ll. 23-35 [WA57])

**RESPONSE:**

Admitted.

**Paragraph 8 States:**   According to Table 5, one of the ingredients in 100 grams of AndroGel® is 4.72 grams of 0.1 N sodium hydroxide. (Ex. 1, col. 13,1. 32 [WA57]); Ex. 3 at 26 [WA277])

**RESPONSE:**

Admitted.

**Paragraph 9 States:**   The paragraph following Table 5 in the '894 patent application and the issued patent states:

> One skilled in the art will appreciate that the constituents of this formulation may be varied in amounts yet continue to be within the spirit and scope of the present invention. For example, the composition may contain about 0.1 to about 10.0 g of testosterone, about 0.1 to about 5.0 g Carbopol, about 0.1 to about 5.0 g isopropyl myristate, and about 30.0 to about 98.0 g ethanol.

(Ex. 1, col. 13, 11. 36-43 [WA57]; Ex. 3 at 26 [WA277])

**RESPONSE:**

Admitted.

**Paragraph 10 States:**   On October 19, 2001, Unimed filed an amendment and response to an Office action that canceled certain claims and added others. (Ex. 3 [WA429-451])

**RESPONSE:**

Admitted.

**Paragraph 11 States:**   New dependent claims 45 and 64 in the October 19, 2001 amendment and response recited sodium hydroxide but specified no range for this component. (Ex. 3 at 4, 6 [WA432-434])

**RESPONSE:**

Admitted, except that _any_ amount of sodium hydroxide would have been

encompassed within that claim.

**Paragraph 12 States:**   The remarks in the October 19, 2001 amendment and response did not mention dependent claims 45 and 64 or sodium hydroxide. (Ex. 3 at 4, 6 [WA432-434])

**RESPONSE:**

Admitted.

**Paragraph 13 States:**   On December 21, 2001, Unimed filed a supplemental amendment. (Ex. 3 [WA480-494])

**RESPONSE:**

Admitted.

**Paragraph 14 States:**   Among other things, the December 21, 2001 supplemental amendment canceled dependent claims 45 and 64 without prejudice and added new claims. (Ex. 3 at 1, 6-8 [WA480-487])

**RESPONSE:**

Admitted.

**Paragraph 15 States:**   The new claims in the December 21, 2001 supplemental amendment did not mention sodium hydroxide, nor did the remarks. (Ex. 3 [WA480-494])

**RESPONSE:**

Admitted.

**Paragraph 16 States:**   On February 8, 2002, Unimed filed a second supplemental amendment. (Ex. 3 [WA496-541])

**RESPONSE:**

Admitted.

**Paragraph 17 States:**   Among other things, the February 8, 2002 second supplemental amendment changed all independent claims but one (nos. 47, 61, 78, and 97 [new] but not 110 [new]) to recite ranges for sodium hydroxide, i.e., "about 1% to about 5%" and "about 1% to about 3%." (Ex. 3 at 15-19 [WA510-514]) As support for these ranges, Unimed cited Table 5 and stated, "Note that 4.72g of 0.1N NaOH = about 1.8g NaOH in 100g of gel, or about 1.8%." (Ex. 3 at 26 [WA521])

**RESPONSE:**

Admitted that the February 8, 2002 second supplemental amendment changed all independent claims but not claim 110.  Admitted that Unimed cited Table 5 as support for the ranges.  Unimed also cited additional portions of the

specification as support for the ranges.  (Ex. I, UCFH 2637).  Denied that the note

is provided as support for the ranges as the note relates only to a particular

concentration, not a range, was in error, and consequently is not material.  (Ex. W,

pgs. 181-186).

**Paragraph 18 States:**   The remarks in the February 8, 2002 second
supplemental amendment did not otherwise mention sodium hydroxide. (Ex. 3 at
24-27 [WA519-522])

**RESPONSE:**

Admitted.

**Paragraph 19 States:**   Unimed filed additional supplemental responses
and amendments after February 8, 2002, but none of them changed the sodium
hydroxide limitations or even mentioned sodium hydroxide. (Ex. 3 [WA615-21,
WA643-47])

**RESPONSE:**

Admitted.

**Paragraph 20 States:**   On July 24, 2002, Unimed filed another
supplemental amendment. Although the claims reciting sodium hydroxide were
amended, the sodium hydroxide limitations themselves were not. (Ex. 3 [WA615-
621])

**RESPONSE:**

Admitted.

**Paragraph 21 States:**   On August 1, 2002, Unimed filed another
supplemental amendment. Although claims reciting sodium hydroxide were
amended, the sodium hydroxide limitations themselves were not. (EX. 3 [WA643-
647])

**RESPONSE:**

Admitted.

**Paragraph 22 States:**   None of the interview summaries or Office actions in the prosecution history ever mentioned sodium hydroxide, including those after February 8, 2002. (Ex. 3 [WA409-418, WA467, WA562, WA563, WA587-594, WA610, WA639])

**RESPONSE:**

Denied.   The February 8, 2002 Supplemental Amendment mentioned sodium hydroxide. (Ex. I at 15-23, 26)   Sodium hydroxide was also mentioned in the July 24, 2002 Supplemental Amendment.  (Ex. Z at WA615-21).

**Paragraph 23 States:**   On June 12, 2003—more than five months after the '894 patent issued—Unimed filed a request for a certificate of correction to, among other things, change claims 1, 9, 10, and 18 by inserting "0.1 N" before the term "sodium hydroxide." (Ex. 3 [WA705-713])

**RESPONSE:**

Admitted.

**Paragraph 24 States:**   Unimed requested the "0.1 N" corrections under 37 C.F.R. § 1.323, which is the implementing regulation for 35 U.S.C. § 255. (Ex. 3 [WA707-708]).

**RESPONSE:**

Admitted.

**Paragraph 25 States:**   Unimed supported its request for a certificate of correction by stating that the "mistakes were made in good faith and that the proper language is contained throughout the specification, see, for example, column 13, Table 5 ('0.1 N NaOH' (sodium hydroxide))." (Ex. 3 [WA707])

**RESPONSE:**

Admitted.

**Paragraph 26 States:**   Unimed also stated in its request for a certificate of correction that "the above-proposed correction would not introduce any new matter and would not alter the substance of the patent in any way that would necessitate reevaluation by an Examiner." (Ex. 3 [WA707])

**RESPONSE:**

Admitted.

**Paragraph 27 States:**   On December 16, 2003, the Patent Office issued the requested certificate of correction, which, among other things, added the term "0.1 N" before the term "sodium hydroxide" in claims 1, 9, 10, and 18. (Ex. 3 [WA719-720])

**RESPONSE:**

Admitted.

In response to Paddock's Statement Of Material Facts As To Which There Are No Genuine Issues To Be Tried contained in paragraphs 1-44, Unimed responds as follows:

**Paragraph 1 States:**   There are five independent claims in the '894 patent. The claims are found at columns 49-52 of the patent. App. A. Four of these, claims 1, 9, 10 and 18, recite sodium hydroxide as an ingredient in the claimed composition and provide a range for the proportional amount of that ingredient. Accordingly, all of the dependent claims that depend from one of those claims also recite a range for that ingredient.

**RESPONSE:**

Admitted.

**Paragraph 2 States:**     Specifically, claims 1, 10 and 18(a) all recite a range of "about 1% to about 5%" sodium hydroxide.  Claim 9 recites a range of "about 1% to about 3%" sodium hydroxide.  Claims 2-7 depend from, and therefore incorporate the requirements of, claim 1.  Claims 11-17 depend from, and therefore incorporate the requirements of, claim 10.

**RESPONSE:**

Admitted.

**Paragraph 3 States:**     The other independent claim, claim 31, does not recite sodium hydroxide as an ingredient of which the composition of claim 31 is stated to "consist essentially of".

**RESPONSE:**

Admitted.

**Paragraph 4 States:**     There is no reference to these ranges or to any other range of sodium hydroxide in the specification of the '894 patent.

**RESPONSE:**

Object as immaterial.  The claimed range for sodium hydroxide was not required to be explicitly listed as the range of sodium hydroxide was readily understood by one of ordinary skill in the art by virtue of the amount of carbomer included in the claims and specification.  (Ex. E at ¶ 74; Ex. P at ¶¶ 26 to 42).

**Paragraph 5 States:**     The original patent application that resulted in the '894 patent was filed on August 30, 2000.  App. C, Tabs 3-7.

**RESPONSE:**

Admitted.

**Paragraph 6 States:**     None of the original claims recited sodium hydroxide as an ingredient in the claimed composition.  *See* App. C, Tab 3.

**RESPONSE:**

Admitted.  But, note that the original claims were open-ended and therefore did not preclude sodium hydroxide as an ingredient in the claimed composition. (Ex. Y, UCFH 0080-0084).

**Paragraph 7 States:**     Nowhere in the specification (App. C, Tab 4) (whether as originally filed or as in the issued patent) was there a range provided for the amount sodium hydroxide.

**RESPONSE:**

Object as immaterial.  The claimed range for sodium hydroxide was not required to be explicitly listed in the specification as the range of sodium hydroxide was readily understood by one skilled in the art by virtue of the amount of carbomer included in the claims and specification.  (Ex. E at ¶ 74; Ex. P at ¶¶ 26 to 42 ).

**Paragraph 8 States:**     The only reference to sodium hydroxide in the specification is in Table 5 (App. A, col. 13, App. C, Tab 4, FW126) which is the formula for the only specific composition described in the specification, namely, Androgel®.

**RESPONSE:**

Admitted.

**Paragraph 9 States:**     Table 5 reads:

11

TABLE 5

Composition of AndroGel®

| SUBSTANCE | AMOUNT (w/w) PER 100g Of GEL |
|---|---|
| Testosterone | 1.0g |
| Carbopol 980 | 0.90g |
| Isopropyl myristate | 0.50g |
| 0.1 N NaOH | 4.72g |
| Ethanol (95% w/w) | 72.5g* |
| Purified water (qsf) | 100g |

*corresponding to 67 g of ethanol.

**RESPONSE:**

Admitted.

**Paragraph 10 States:**    "NaOH" is the chemical name for pure sodium hydroxide, which exists in solid form.  App. L ¶ 45(Allen 4/22/05 Expert Report).

**RESPONSE:**

Admitted.

**Paragraph 11 States:**    In the expression "0.1 N", N is an abbreviation for the term normal which in this context refers to a solution having a concentration of one gram equivalent of solute per liter.  *Id.*; *see also*, the relevant definition of normal at Merriam-Webster Online.  Therefore, in this context, the term "0.1 N NaOH" refers to a particular normality or concentration of sodium hydroxide in solution.

**RESPONSE:**

Admitted.

**Paragraph 12 States:**   Immediately after Table 5 in the patent is the following paragraph:

> One skilled in the art will appreciate that the constituents of this formulation may be varied in amounts yet continue to be within the spirit and scope of the present invention.  For example, the composition may contain about 0.1 to about 10.0 g of testosterone, about 0.1 to about 5.0 g Carbopol, about 0.1 to about 5.0 g isopropyl myristate, and about 30.0 to about 98.0 g ethanol.  [App. A, col. 13, lines 36-43]

**RESPONSE:**

Admitted.

**Paragraph 13 States:**   There is no mention in this passage, or anywhere else in the specification as filed, of any range of amounts of sodium hydroxide.

**RESPONSE:**

Object as immaterial.   The range for sodium hydroxide was not required to be listed in the specification as the range of sodium hydroxide was readily understood by one skilled in the art by virtue of the amount of carbomer included in the claims and specification.  (Ex. E at ¶ 74; Ex. P at ¶¶ 26 to 42 ).  In addition, this passage specifically indicates that one skilled in the art would understand that the amount of sodium hydroxide could be varied.

**Paragraph 14 States:**   Again, the only reference to sodium hydroxide in the entire patent application as originally filed, including the original proposed claims, is the reference in Table 5 to the amount in Androgel, i.e., 4.72 g of 0.1 N NaOH.

**RESPONSE:**

Admitted.

**Paragraph 15 States:**   Since neither the specification nor the original claims contained a reference to sodium hydroxide, all later claims which set forth such a reference, including those which were later added claiming a range of sodium hydroxide, were added by amendment.

**RESPONSE:**

Denied.   Sodium hydroxide is specifically referenced in Table 5 of the

original application and issued patent.   In addition, the original claims were open-

ended, and therefore did not need to expressly recite sodium hydroxide.

**Paragraph 16 States:**   On October 19, 2001, applicants filed an Amendment and Response to June 19, 2001 Office Action that, among other things, added two new dependent claims, 45 and 63, that mark the first appearance of a reference to sodium hydroxide in any of the proposed claims.  Applicants did not comment on these claims in the Remarks section of its submission.  App. C, Tab 14 (new claims 45 and 64 at FW318 and FW320).

**RESPONSE:**

Admitted.

**Paragraph 17 States:**   In each of these new claims, the term sodium hydroxide appears by itself without any indication of a range; e.g., proposed claim 45 reads:  "The composition as recited in Claim 1 further consisting essentially of sodium hydroxide."  *Id.*

**RESPONSE:**

Admitted.

**Paragraph 18 States:**   In   a   Supplemental   Amendment,   dated December 21, 2001, various claims were added and others cancelled.  Among those cancelled without comment were proposed claims 45 and 64 which had first introduced a reference to sodium hydroxide in the proposed claims.  App. C, Tab 19, FW374-390.

**RESPONSE:**

Admitted.

**Paragraph 19 States:**   Upon the cancellation of those claims by this amendment,  none  of  the  proposed  claims  contained  a  reference  to  sodium hydroxide until the February 2002 amendment discussed below.

**RESPONSE:**

Admitted.

**Paragraph 20 States:**   Claims referring to a range of sodium hydroxide were first introduced through an amendment in February 2002, titled Supplemental Amendment II (February 8, 2002).  App. C, Tab 21 at FW 394-439.  See e.g. proposed claims 47, 61, 78, and 97 at App. C., Tab 21 at FW408-12.

**RESPONSE:**

Admitted.

**Paragraph 21 States:**   These proposed claims later became claims 1, 9, 10 and 18 of the issued patent.

**RESPONSE:**

Admitted.

**Paragraph 22 States:**   These proposed claims set forth one of two ranges for a proportionate amount of sodium hydroxide in the claimed composition: either about 1% to 5% (e.g. proposed claims 47, 78 and 97) or about 1% to 3% (e.g. proposed claim 61).  *Id.*

**RESPONSE:**

Admitted.

**Paragraph 23 States:**     To support these new claims reciting not only sodium hydroxide but also these ranges of amounts of sodium hydroxide, the applicants presented, in the same Supplemental Amendment II, a calculation purporting to convert the amount of sodium hydroxide in Androgel, when expressed in terms of 0.1 N, into the equivalent amount of pure sodium hydroxide, as shown in the following excerpt from the pertinent table in that submission:

| Claim | Support in Specification |
|---|---|
| 47-48, 51-52, 54-57 | pp. 23-27; Table 5, p. 26.  **Note that 4.72g of 0.1N NaOH=about 1.8g NaOH in 100g of gel, or about 1.8%** |

App. C, Tab 21 at FW419 (emphasis added).

**RESPONSE:**

Admitted that Unimed cited Table 5 as support for the ranges.  Unimed also cited additional portions of the specification as support for the ranges.  (Ex. I, UCFH 2637).  Denied that the note is provided as support for the ranges as the note relates only to a particular concentration, not a range, was in error, and consequently is not material.  (Ex. W at pgs. 181-186).

**Paragraph 24 States:**     Other portions of this table also point to Table 5, p. 26 (i.e., of the original specification) as supporting the other proposed claims (61, 78 and 97) to which a reference to certain ranges of sodium hydroxide was added by this amendment. *Id.*

**RESPONSE:**

Admitted.

**Paragraph 25 States:**    The highlighted portion clearly purports to show the conversion of the amount of sodium hydroxide in Androgel® (as shown in Table 5 of the specification as originally filed and as issued), i.e., 4.72 grams of 0.1 N NaOH (in solution), to an amount of pure (solid) NaOH:  a value which is given as 1.8%.

**RESPONSE:**

Denied.  There is no basis for the statement that the calculation intended to show a conversion from sodium hydroxide solution to pure sodium hydroxide and that conclusion is merely attorney argument.  Unimed therefore objects on the basis that Paddock's purported fact is not supported by a citation to evidence proving the fact (LR 56.1(b)), and is merely attorney argument.

**Paragraph 26 States:**    This 1.8% NaOH value is roughly in the middle of the ranges (1%-5% and 1%-3%) given for sodium hydroxide in the proposed claims added by this amendment and is particularly close to the midpoint of the about 1% to 3% range of proposed claim 61.

**RESPONSE:**

Denied.  The calculation is not provided as support for the ranges as the calculation relates only to a particular concentration, not a range, was in error, and consequently is not material.  (Ex. W at pgs. 181-186).  Moreover, Unimed further objects on the basis that Paddock's purported fact is not supported by a citation to evidence proving the fact (LR 56.1(b)), and is merely attorney argument.

**Paragraph 27 States:**    Proposed claim 61 (later issued as claim 9) also contains the narrowest ranges of the other ingredients in the claimed composition as compared to the other independent claims and is drawn more closely than any of the other claims around the proportional ingredient amounts given for Androgel® in Table 5 of the specification.

**RESPONSE:**

Denied.  Unimed further objects on the basis that Paddock's purported fact is not supported by a citation to evidence proving the fact (LR 56.1(b)), and is merely attorney argument.

**Paragraph 28 States:**    These proposed claims 47, 61, 78 and 97, which later became issued claims 1, 9, 10 and 18, recite pure (solid) sodium hydroxide. See Pl.  7/25/05 Memorandum on Claim Construction at 19.

**RESPONSE:**

Admit that the claims recite pure sodium hydroxide in error, but were understood by those skilled in the art to be sodium hydroxide in solution.  (Ex. L at ¶ 3; Ex. M at ¶ 3).

**Paragraph 29 States:**    The conversion calculation shown above is in fact mathematically incorrect; it is off by two decimal places, a factor of 100.  It should have said 0.018 g NaOH is equivalent to 4.72 g of NaOH, instead of 1.8 g. See Pl. 7/25/05 Memorandum on Claim Construction at 29.

**RESPONSE:**

Denied.  The Statement of Fact, as recited by Paddock, is in error as it does not include the 0.1 N concentration and therefore does not accurately reflect Plaintiffs' memo on claim construction.

**Paragraph 30 States:**   Normality refers to a solution having a concentration of one gram equivalent of solute per liter.  In Table 5, the sodium hydroxide content in Androgel® is expressed as 4.72 g 0.1 N NaOH per 100 g of gel.

**RESPONSE:**

Admitted.

**Paragraph 31 States:**   0.1 N sodium hydroxide means an aqueous solution containing 0.1 equivalent weight of NaOH per liter of solution.  App. L ¶ 46 (4/22/05 Allen Expert Report).

**RESPONSE:**

Admitted.

**Paragraph 32 States:**   The equivalent weight of NaOH is 40 g. *Id*.

**RESPONSE:**

Admitted.

**Paragraph 33 States:**   A 0.1 N NaOH solution has 0.1 equivalent weight of NaOH per liter of solution, or 4 g of NaOH (0.1 x 40) per liter.  *Id*.

**RESPONSE:**

Admitted.

**Paragraph 34 States:**   Assuming a density of water of 1 g/ml, a liter of the solution weighs approximately 1000 g. *Id*.

**RESPONSE:**

Admitted.

**Paragraph 35 States:**   Thus, 1 g of 0.1 N NaOH solution contains 0.004 g NaOH (4/1000).

**RESPONSE:**

Admitted.

**Paragraph 36 States:**   Mathematically, applying the term 0.1 N to the incorrect result of the conversion calculation does not correct it; the only way to correct it is by moving the decimal point on the incorrect result of 1.8 g NaOH two places to the left so as to give the correct conversion of 0.018 g NaOH.

**RESPONSE:**

Object as immaterial, the Certificate of Correction was directed to a correction of an obvious error in the claims, not to an error in a calculation in the prosecution history. Unimed further objects on the basis that Paddock's purported fact is not supported by a citation to evidence proving the fact (LR 56.1(b)), and is merely attorney argument.

**Paragraph 37 States:**   Put differently, a calculation meant to convert a certain amount of 0.1 N sodium hydroxide (which by definition is in solution) to pure sodium hydroxide and which is off by a factor of 100 cannot be corrected by simply adding the 0.1 N term to the result of the incorrect conversion calculation.

**RESPONSE:**

Object as immaterial, the Certificate of Correction was directed to a correction of an obvious error in the claims, not to an error in a calculation in the prosecution history. Unimed further objects on the basis that Paddock's purported fact is not supported by a citation to evidence proving the fact (LR 56.1(b)), and is merely attorney argument.

**Paragraph 38 States:**   For example, 1.8 g of 0.1 N NaOH (in solution) (the incorrect conversion result with 0.1 N applied to it as Plaintiffs have sought to correct the claims) does not equal to 0.018 g NaOH (solid/pure) (which would have been the correct result of converting 4.72 g 0.1 N NaOH to pure NaOH).

**RESPONSE:**

Object as immaterial, the Certificate of Correction was directed to a correction of an obvious error in the claims, not to an error in a calculation in the prosecution history.  Unimed further objects on the basis that Paddock's purported fact is not supported by a citation to evidence proving the fact (LR 56.1(b)), and is merely attorney argument.

**Paragraph 39 States:**   Instead, 1.8 g of 0.1 N NaOH (solution) is equal to 0.0072 g NaOH (pure/solid).  Thus, 1.8 grams of 0.1 N NaOH (solution) = 1.8 g x (0.1 equivalent weight/1000 ml water x 40 grams NaOH/equivalent weight) = 0.0072 g NaOH (solid).

**RESPONSE:**

Object as immaterial, the Certificate of Correction was directed to a correction of an obvious error in the claims, not to an error in a calculation in the prosecution history. Unimed further objects on the basis that Paddock's purported fact is not supported by a citation to evidence proving the fact (LR 56.1(b)), and is merely attorney argument.

**Paragraph 40 States:**   There is nothing in the prosecution history to suggest that the applicants intended all of the claims of the patent to cover Androgel®, except claim 9 which, to the contrary, has the narrowest ranges of relative proportions of ingredients of all the claims and is drawn more closely to ingredient proportions of Androgel® than any of the other claims.

**RESPONSE:**

Unimed objects on the basis that Paddock's purported fact is not supported by a citation to evidence proving the fact (LR 56.1(b)), and is merely attorney argument.   Unimed further objects to the purported fact as immaterial as applicant's intent as to whether all claims were intended to cover Androgel is irrelevant to the issue of the lack of a written description.

**Paragraph 41 States:**   In requesting a Certificate of Correction (five months after the patent issued), applicants and their patent counsel represented that:

> the mistakes were made in good faith and that the proper language is contained throughout the specification, see, for example, column 13, Table 5 ("0.1 N NaOH") (sodium hydroxide)).   As such, the correction does not involve such changes in the patent that would constitute new matter or would require reexamination.  [App. C, Tab 40 at FW596]

**RESPONSE:**

Admitted.

**Paragraph 42 States:**   Applicants did not present the Patent Office with any facts or arguments to support their assertion that the "mistake" with respect to sodium hydroxide was made in good faith.  App. C., Tab 40.

**RESPONSE:**

Denied.  As part of their support for the fact that the mistake was made in good faith, applicants specifically identified the formulation for the preferred embodiment set forth in the specification, which included sodium hydroxide present in solution at a concentration of 0.1 N.  (Ex. O at p.3).

**Paragraph 43 States:**    The Certificate of Correction was issued on December 16, 2003.  App. B.

**RESPONSE:**

Admitted.

**Paragraph 44 States:**    Table 5 (at col. 13) of the patent expresses the amount of sodium hydroxide used in formulation Androgel® in terms of 0.1 N NaOH.  There is however, no scientific reason why that concentration, specifically, why that "normality", must be used in formulating the composition broadly recited in the claims.

**RESPONSE:**

Admitted that Table 5 expresses the amount of sodium hydroxide used in Androgel® in terms of 0.1 N NaOH.  Admitted that there is no scientific reason why an infringing formulation or its equivalent could not use another "normality" that is functionally equivalent to the amount of sodium hydroxide recited in the corrected claims.   However, Unimed objects to the statement as immaterial because the question of whether other normalities may be used to make the

formulation is not relevant to the inquiry concerning the lack of written description.

**Paragraph 45 States:**   Plaintiffs' experts agree that one could use many various normalities of solution of sodium hydroxide to produce the desired result, e.g., 0.2 N, 0.3 N or 0.4 N among many.  Plaintiffs' expert Dr. Weiner explained that "setting forth the amount of sodium hydroxide used in the claimed formulation as a 0.1 N solution is just one of an infinite number of ways that the amount of sodium hydroxide claimed in the '894 Patent could be expressed."  Weiner Expert Report, App. X, ¶ 45.  *See* Barr Dep. Tr., App. DD at 66; Bowman Dep. Tr., App. EE at 150-51, 155, 169-70.  *See also* Allen Rebuttal Report, App. M, ¶ 9; Allen Reply Report, App. N, ¶ 9.

**RESPONSE:**

Object as immaterial because the question of whether other normalities may be used to make the formulation is not relevant to the inquiry concerning whether there was sufficient written description of the claimed ranges of sodium hydroxide. Unimed further objects to the statement and defendants' reliance on Dr. Weiner's deposition testimony because when viewed in context, Dr. Weiner was clearly discussing the issue of infringement, and not the written description issue.

Dated:   December 19, 2005          Respectfully submitted,

                                    UNIMED PHARMACEUTICALS, INC. and
                                    LABORATORIES BESINS ISCOVESCO


                                    By: /s/  Robert S. Rigg                      
                                            One of their attorneys

                                    Jerry B. Blackstock  Georgia Bar No. 061000
                                    HUNTON & WILLIAMS
                                    4100 Bank of America Plaza
                                    600 Peachtree Street NE
                                    Atlanta, Georgia 30308-2216
                                    Telephone:  (404) 888-4000
                                    Facsimile:  (404) 888-4190

                                    James R. Ferguson
                                    Robert S. Rigg
                                    MAYER, BROWN, ROWE & MAW LLP
                                    71 South Wacker Drive
                                    Chicago, Illinois 60606
                                    Telephone:  (312) 782-0600
                                    Facsimile:  (312) 701-7711

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| **UNIMED PHARMACEUTICALS, INC.,** | ) | |
| **a Delaware corporation, and** | ) | |
| **LABORATORIES BESINS** | ) | |
| **ISCOVESCO, a Delaware corporation,** | ) | |
| **Plaintiffs,** | ) | |
| **v.** | ) | |
| **WATSON PHARMACEUTICALS,** | ) | **Nos.  1:03-CV-2501 TWT** |
| **INC., a Nevada corporation, and** | ) | **1:03-CV-2503 TWT** |
| **PADDOCK LABORATORIES, INC., a** | ) | |
| **Minnesota corporation,** | ) | |
| **Defendants.** | ) | |

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on December 19, 2005, a true and correct copy of the foregoing document was filed electronically via CM/ECF in the United States District Court for the Northern District of Georgia, with notice of same being electronically served by the Court, addressed to:

David A. Rabin
Morris, Manning & Martin LLP
1600 Atlanta Financial Center
3343 Peachtree Road, N.E.
Atlanta, Georgia 30326-1044
***Attorneys for the Defendant***
***Watson Pharmaceuticals, Inc.***

Barry S. White
Frommer, Lawrence & Haug LLP
745 Fifth Avenue
New York, New York  10151

***Attorneys for the Defendant***
***Watson Pharmaceuticals, Inc.***

Mark G. Trigg
Ernest L. Greer
Hayden Pace
Greenberg Traurig, LLP
The Forum Suite 400
3290 Northside Parkway, N.W.
Atlanta, Georgia 30327
***Attorneys for the Defendant***
***Paddock Laboratories, Inc.***

Albert L. Jacobs, Jr.
Daniel A. Ladow
Greenberg Traurig, LLP
MetLife Building
200 Park Avenue
New York, NY 10166

***Attorneys for the Defendant***
***Paddock Laboratories, Inc.***

Dated:  December 19, 2005

/s/  Robert S. Rigg