# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

UNIMED PHARMACEUTICALS, INC., )
a Delaware corporation, and )
LABORATORIES BESINS )
ISCOVESCO, a Delaware corporation, )
)
       Plaintiffs, )     CIVIL ACTION FILE
)
vs. )     NO. 1:03-cv-2501-TWT
)
WATSON PHARMACEUTICALS, INC., )
a Nevada corporation, )
)
       Defendant. )

## WATSON'S REPLY MEMORANDUM OF LAW IN SUPPORT
## OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT
## OF INVALIDITY OF CLAIMS 1-30 FOR FAILURE TO
## <u>COMPLY WITH THE WRITTEN-DESCRIPTION REQUIREMENT</u>

Of Counsel:

David A. Rabin           Barry S. White
MORRIS, MANNING & MARTIN, LLP   Steven M. Amundson
Georgia Bar No. 591469        John G. Taylor
1600 Atlanta Financial Center      Joyce W. Luk
3343 Peachtree Road, NE        FROMMER LAWRENCE & HAUG LLP
Atlanta, Georgia 30326         745 Fifth Avenue
Telephone: (404) 233-7000      New York, New York 10151
Facsimile: (404) 365-9532       Telephone: (212) 588-0800
                            Facsimile: (212) 588-0500

Attorneys for Defendant
Watson Pharmaceuticals, Inc.     January 19, 2005

1374240 v01

## **TABLE OF CONTENTS**

INTRODUCTION ...................................................................................1

ARGUMENT .......................................................................................2

I.   The Single Sodium-Hydroxide Data Point Does Not Describe the
     Claimed Sodium-Hydroxide Ranges ...............................................2

II.  Unimed Has Failed to Satisfy its Burden to Rebut Watson's Prima
     Facie Case of Invalidity Under § 112 .............................................4

     A.   Unimed's Extrinsic Expert "Evidence" Fails to Establish the
          Existence of a Material Factual Issue.....................................5

          1.   Even Unimed's Paid Experts Were Unable to Derive the
               Claimed Sodium-Hydroxide Ranges ...........................6

          2.   Unimed's Argument Rests on Erroneous Assumptions ............7

               a.   Unimed Improperly Assumes that the Claimed
                    Inventions Are Restricted to Gels.....................8

               b.   Unimed Improperly Assumes that the "Gelling
                    Agent" of the Claimed Inventions Is Restricted to
                    Carbomers......................................8

          3.   Even Accepting All of Unimed's Assumptions and
               Theories as Correct, Basic Math Shows that One Skilled
               in the Art Would Not Derive the Claimed Sodium-
               Hydroxide Ranges..................................9

          4.   Unimed's Erroneous Assumptions Lead to Anomalous
               Results...........................................11

     B.   Unimed's Other Evidence Fails to Establish the Existence of a
          Material Factual Issue .......................................13

CONCLUSION ...................................................................14

1374240 v01

## TABLE OF AUTHORITIES

**Federal Cases**

Capon v. Eshhar,
    418 F.3d 1349 (Fed. Cir. 2005) ...................................................................12

Evers v. Gen. Motors Corp.,
    770 F.2d 984 (11th Cir. 1985) ........................................................................4

Gen. Elec. Co. v. Joiner,
    522 U.S. 136 (1997)........................................................................................5

In re Filstrup,
    251 F.2d 850 (C.C.P.A. 1958) .......................................................................2

In re Lukach,
    442 F.2d 967 (C.C.P.A. 1971) ............................................................... 2, 3, 4

In re MacLean,
    454 F.2d 756 (C.C.P.A. 1972) ............................................................... 2, 3, 4

In re Ruschig,
    379 F.2d 990 (C.C.P.A. 1967) .......................................................................3

Kropa v. Robie,
    187 F.2d 150 (C.C.P.A. 1951) .......................................................................3

McDowell v. Brown,
    392 F.3d 1283 (11th Cir. 2004) .....................................................................5

Moss v. Potter,
    No. 04CV1566, 2005 WL 2250690, at *1, 3 (W.D. Pa. Aug. 22,
    2005) .............................................................................................................11

Phillips Petroleum Co. v. Huntsman Polymers Corp.,
    157 F.3d 866 (Fed. Cir. 1998) .......................................................................4

Purdue Pharma L.P. v. Faulding, Inc.,
    230 F.3d 1320 (Fed. Cir. 2000) ...................................................................11

1374240 v01

Ralston Purina Co. v. Far-Mar-Co.,
 772 F.2d 1570 (Fed. Cir. 1985) .............................................................. 2, 3, 4

Schering Corp. v. Amgen, Inc.,
 222 F.3d 1347 (Fed. Cir. 2002) ......................................................................2

United Carbon Co. v. Binney & Smith Co.,
 317 U.S. 228, 63 S. Ct. 165 (1942) ................................................................8

Vas-Cath Inc. v. Mahurkar,
 935 F.2d 1555 (Fed. Cir. 1991) ......................................................................8

**Federal Statutes and Rules**

35 U.S.C. § 112 .............................................................................. 4, 14, 15

# **INTRODUCTION**

Unimed's attempt to avoid summary judgment all but ignores its own patent and prosecution history.  Instead, Unimed relies on the conclusory, litigation-driven statements of its paid experts as "evidence" to attempt to create a factual dispute about whether a person skilled in the art could derive the claimed sodium-hydroxide ranges from the claimed gelling-agent ranges.  But Unimed misplaces its reliance on those statements because, as a settled legal principle, the Court should not consider extrinsic "evidence" that is merely conclusory.

Moreover, Unimed makes erroneous assumptions and improperly reads unclaimed limitations, such as pH, viscosity, and specific gelling agents (carbomers[1]) into the claims to create a semblance of support for its experts' naked opinions.  Then, relying upon these erroneous assumptions and improperly imported claim limitations, Unimed rests its case against summary judgment on its argument that those skilled in the art could "derive" the claimed sodium-hydroxide ranges from the claimed gelling-agent ranges.  But Unimed fails to show how that

---

[1]  "Carbomer" is a generic term that defines a large group of acrylic acid polymers used as viscosity-increasing agents.  They are used mainly in liquid or semisolid pharmaceutical formulations, such as creams, gels and ointments.  (Ex. 25 [WA3320], Ex. 26 [WA3357])  As Unimed admits, the various carbomers differ in their respective properties, and exhibit viscosity "plateau regions" that start at different points, end at different points, and span different ranges.  (Pls.' Mem. 9, 11, 12; Ex. 49 at 1-5; Pls' State. of Add'l Mat'l Facts ¶¶ 28, 32)

could be done.  Unimed does not show those calculations because doing so would produce sodium-hydroxide ranges that differ greatly from the claimed ranges.

Unimed failed to present competent evidence showing that a genuine issue of material fact exists concerning invalidity under § 112's written-description requirement.  Since no reasonable juror could conclude that the originally filed application included sufficient detail to enable those skilled in the art to recognize that Unimed invented the ranges that it later claimed, summary judgment is appropriate.

## ARGUMENT

I.      The Single Sodium-Hydroxide Data Point Does Not
        Describe the Claimed Sodium-Hydroxide Ranges

As explained in Watson's initial brief, a single data point does not suffice to support a later-claimed range that encompasses that data point.  See In re Lukach, 442 F.2d 967, 969 (C.C.P.A. 1971); In re MacLean, 454 F.2d 756, 759 (C.C.P.A. 1972); Ralston Purina Co. v. Far-Mar-Co., 772 F.2d 1570, 1575-78 (Fed. Cir. 1985).  Claims with no explicit disclosure must find inherent support in the originally filed application.  Schering Corp. v. Amgen, Inc., 222 F.3d 1347, 1352 (Fed. Cir. 2002).  Sufficient inherent support exists where "the specification is so worded that **the necessary and only reasonable construction** to be given the disclosure by one skilled in the art is one which will lend clear support to the claim." In re Filstrup, 251 F.2d 850, 853 (C.C.P.A. 1958) (emphasis added); see

Kropa v. Robie, 187 F.2d 150, 154-55 (C.C.P.A. 1951) (inherency means that something "must inevitably happen").  The "mere fact that one following the disclosure of an application **might** produce a [composition] satisfying a claim is not, in itself, a sufficient basis for" satisfying the written-description requirement. Filstrup, 251 F.2d at 853 (emphasis added).  A skilled artisan's interpretation of what must inevitably happen must come from the patent disclosure itself.  In re Ruschig, 379 F.2d 990, 995-96 (C.C.P.A. 1967).

Unimed concedes—as it must—that the claimed ranges are **not explicitly** disclosed in the specification and instead asserts that the ranges are somehow **inherently** disclosed.  Specifically, Unimed argues, through its experts, that the single sodium-hydroxide data point in Table 5 adequately describes the claimed sodium-hydroxide ranges because those skilled in the art could supposedly "derive" the ranges from the gelling-agent ranges that do appear in the claims. (Pls.' Mem. 23-26)  To this end, Unimed contends that the pertinent case law in Ralston Purina, Lukach, and MacLean is distinguishable on the grounds that violations of the written-description requirement occurred because skilled artisans could not derive the ranges from the original disclosures.  (Pls.' Mem. 30)  But no such distinction exists because, here too, a skilled artisan cannot derive the claimed sodium-hydroxide ranges from the original disclosure.  See infra § II.A.1 pp. 6-8, § II.A.3 pp. 10-12.  Indeed, Unimed did not do so anywhere in its summary judgment defense papers.  Thus, the '894 patent's single sodium-hydroxide data

point, like the information at issue in <u>Lukach</u>, <u>MacLean</u> and <u>Ralston Purina</u>, does not suffice to support the claimed sodium-hydroxide ranges.

II.     Unimed Has Failed to Satisfy its Burden to Rebut
        <u>Watson's Prima Facie Case of Invalidity Under § 112</u>

The opinions Unimed proffers as "evidence" are legally insufficient to rebut Watson's prima facie showing that the single sodium-hydroxide data point disclosed in the original application does not support the later-claimed ranges.  In its opposition, Unimed walks away from the intrinsic evidence—its own patent and prosecution history—and instead relies on the conclusory statements of its paid experts, Drs. Bowman and Weiner, to rebut Watson's prima facie case of invalidity under § 112.  (Pls.' Mem. at 23-28, 33)  Both experts offer the conclusion that a "chemist could easily derive the claimed limits of the sodium-hydroxide range from the specific range of carbomer disclosed in the specification."  (Pls.' Mem. at 25; Pls.' Exs. CC ¶ 20, DD ¶ 22)

Conclusory statements, however, are not considered when deciding a summary-judgment motion.  <u>Evers v. Gen. Motors Corp.</u>, 770 F.2d 984, 986 (11th Cir. 1985) ("This court has consistently held that conclusory allegations without specific supporting facts have no probative value"); <u>Phillips Petroleum Co. v. Huntsman Polymers Corp.</u>, 157 F.3d 866, 876 (Fed. Cir. 1998) (patentee failed to raise genuine issue of material fact since "the expert declarations [we]re wholly conclusory, devoid of facts upon which the affiant[s'] conclusions, as experts were

reached").  In fact, the Supreme Court and the Eleventh Circuit have excluded

expert opinions, where, as here, there was too great an "analytical gap between the

data and the opinion proffered."  <u>Gen. Elec. Co. v. Joiner</u>, 522 U.S. 136, 146

(1997); <u>McDowell v. Brown</u>, 392 F.3d 1283, 1298 (11th Cir. 2004).

A.     Unimed's Extrinsic Expert "Evidence" Fails to
       <u>Establish the Existence of a Material Factual Issue</u>

Drs. Bowman and Weiner offer as "evidence" the conclusory opinion that a

"chemist could easily derive the claimed limits of the sodium-hydroxide range

from the specific range of carbomers disclosed in the specification."  (Pls.'

Exs. CC ¶ 20, DD ¶ 22)  Purporting to support this conclusion, they recite

irrelevant information concerning the properties of carbomer, sodium hydroxide,

pH, and viscosity.  (Pls.' Exs. CC ¶¶ 5-19, DD ¶¶ 5-21)  They lecture on how

sodium hydroxide affects pH and viscosity in compositions containing carbomers.

(Pls.' Exs. CC ¶¶ 5-14, DD ¶¶ 5-14)  After imparting this information, Drs.

Bowman and Weiner leap to the conclusion that a "chemist could easily calculate

the concentration of sodium hydroxide needed to partially neutralize a specific

concentration of carbomer to obtain an appropriate pH for the formation of a

gel…."  (Pls.' Exs. CC ¶ 19, DD ¶ 21)

None of this information leads to the conclusion that those skilled in the art

could derive the claimed sodium-hydroxide ranges from the claimed ranges of an

unspecified "gelling agent."  The ability to calculate the sodium-hydroxide

concentration needed to partially neutralize a **specific** concentration of a **specific** carbomer to obtain an appropriate pH for a gel formulation does not demonstrate the ability to derive a particular sodium-hydroxide limit (e.g., 1%) from a particular gelling-agent limit (e.g., 0.1%) without: (1) a specific target pH or viscosity and (2) a specific gelling agent. The claims at issue lack these specifics. Drs. Bowman and Wiener make a large, unexplained analytical leap in opining otherwise.

1.    Even Unimed's Paid Experts Were Unable to
      <u>Derive the Claimed Sodium-Hydroxide Ranges</u>

Unimed's experts highlight the analytical gap in their argument by failing to calculate any sodium-hydroxide ranges from any carbomer ranges despite repeatedly asserting that a skilled chemist could "easily" derive them. This reveals a fatal weakness in Unimed's defense. Put simply, if I repeatedly tell you that I win the argument because it's "easy" to do something—but I never once do it— have I convinced you that it's easy?

Unimed failed to derive the 1% sodium-hydroxide lower limit in claims 1, 10, and 18 from the claims' 0.1% gelling-agent lower limit. That failure undermines Unimed's assertion that a "chemist could easily calculate the concentration of sodium hydroxide needed to partially neutralize a specific concentration of carbomer to obtain a suitable pH for the formation of the gel."

Unimed, moreover, did not derive any sodium-hydroxide ranges from any gelling-agent ranges for the claims at issue because those skilled in the art could not do so.  Even assuming that the claimed "gelling agent" encompasses only carbomers—as Unimed improperly does—"carbomer" is a term that encompasses a class of many compounds that differ in their respective properties.  (Ex. 50 [WA3711-27])  Unimed and its experts admit this, noting that the plateau region depends on, among other things, the particular carbomer's structure.  (Pls.' Mem. 9, 11, 12; Pls.' Exs. CC ¶¶ 10, 14, DD ¶¶ 10, 14; Pls.' State. of Add'l Mat'l Facts ¶¶ 28, 32)  Consequently, the lower end of the plateau region and the amount of sodium hydroxide needed for partial neutralization differ from carbomer to carbomer, as does the upper end.  (Pls.' Ex. T 1-5; Pls.' Mem. 11)

Because the lower end of the plateau region depends on the type of carbomer, the corresponding lower limit for pH—and thus sodium hydroxide—also depends on the type of carbomer.  Accordingly, the sodium-hydroxide lower limit would not inevitably, if ever, correspond to 1% for a 0.1% carbomer concentration.  Thus, even if the claims specified some viscosity values (which they do not), Unimed's analysis fails since the choice of carbomer changes the sodium-hydroxide lower limit.

2.     Unimed's Argument Rests on Erroneous Assumptions

In addition, Unimed's analysis rests on two incorrect assumptions: first, that the claims are restricted to gels (of a particular pH and viscosity); and second, that

the "gelling agent" is restricted to carbomers.  The clear language of the claims

shows that those assumptions are plainly wrong.

> a.  Unimed Improperly Assumes that the
>       Claimed Inventions Are Restricted to Gels

The claim language itself establishes that those skilled in the art would not

necessarily seek the plateau region of the pH-viscosity curve to form a gel.  Claims

1, 10, and 18 do not specify a gel but instead broadly encompass any

"pharmaceutical composition" containing the listed ingredients.  Again, Dr.

Bowman agrees.  (Ex. 48 at 46)

Various products containing gelling agents (or thickeners) fall within the

category "pharmaceutical composition," including creams, lotions, and

suspensions.  (Ex. 23 at 9)  The viscosity of each kind of product differs from the

other types.  (Ex. 23 at 4; Ex. 24 at 745, 747)  For example, lotions are either liquid

or semiliquid compositions, whereas gels are semisolid compositions.  (Ex. 24 at

745, 747)  Consequently, the plateau region of the pH-viscosity curve for a gel

does not coincide with the broader scope of the claims.

> b.  Unimed Improperly Assumes that the "Gelling Agent"
>       of the Claimed Inventions Is Restricted to Carbomers

A patent's claims "measure the invention."  See United Carbon Co. v.

Binney & Smith Co., 317 U.S. 228, 232, 63 S. Ct. 165, 167–68 (1942).  For

purposes of the written-description inquiry, the invention is whatever is now

claimed.  Vas-Cath Inc. v. Mahurkar, 935 F.2d 1555, 1563–64 (Fed. Cir. 1991).

Claims 1, 10, and 18 by their terms do not require a carbomer.  Instead, they broadly allow use of any "gelling agent" to thicken the composition.  The '894 patent itself refers us to pharmaceutical handbooks that discuss suitable thickeners (or gelling agents).  (Ex. 1, col. 12, ll. 60-67)  Those handbooks identify many gelling agents beyond carbomers (which are acidic materials), including nonacidic materials such as carboxymethylcellulose, methylcellulose, xantham gum, hydroxypropyl cellulose, and hydroxypropylmethylcellulose.  (Ex. 51 at 1030-34; Ex. 52 at 313-14, 843-44, 1079-80, 2428-30, 2537-38)  And Unimed's expert, Dr. Bowman, agrees that carbomers are not the only gelling agents that can be used in the claimed inventions.  (Ex. 48 at 90)

Thus, based on the claim language itself, the specification's teachings and Dr. Bowman's testimony, Unimed's core assumption that those skilled in the art would necessarily use a carbomer as the gelling agent is incorrect.

> 3. Even Accepting All of Unimed's Assumptions and Theories as Correct, Basic Math Shows that One Skilled in the Art Would Not Derive the Claimed Sodium-Hydroxide Ranges

Even assuming *arguendo* the correctness of Unimed's experts' assumptions, i.e., that: (1) carbomer is the only gelling agent covered by the claims and (2) that the carbomer in those claims requires the same neutralization as the specific carbomer in AndroGel®, Carbopol 980, a person skilled in the art would nonetheless derive different sodium-hydroxide ranges than the claimed ranges.

For example, according to Unimed's Dr. Bowman, approximately 4.0% of the acid groups in the 0.9 grams of the carbomer Carbopol 980 were neutralized by the addition of 4.72 grams of 0.1 N sodium hydroxide in the AndroGel® formulation.  (Pls.' Ex. P at ¶¶ 32-33)  Using his logic, the simple calculation performed by Dr. Zatz and not countered by Unimed or its experts shows that the 0.1% to 5% carbomer ranges in claims 1, 10, and 18 would require about **0.5% to more than 24%** 0.1 N sodium hydroxide for 4% neutralization—not the vastly different claimed sodium-hydroxide ranges of **1% to 5%**.  (Ex. 53 at 21-22) [2] Similarly, claim 9's 0.5%-2% carbomer range would require about **2.6% to 10.5%** 0.1 N sodium hydroxide for 4.0% neutralization—not the claimed sodium-hydroxide range of **1% to 3%**.  (Ex. 53 at 21-22).  Dr. Bowman's logic, therefore, produces different sodium-hydroxide ranges than those claimed.

It is telling that despite Unimed's experts' repeated assertions that those skilled in the art could easily derive the claimed sodium-hydroxide ranges from the claimed gelling-agent ranges, they never attempted to calculate those ranges.  As shown above, doing so would have starkly demonstrated the flaws in their

---

[2] Ex. 53 is a report by Watson's expert, Dr. Joel Zatz.  Dr. Zatz was deposed by Unimed on July 7, 2005.  Unimed has filed the transcript of that deposition as Ex. LL.  Unimed marked Dr. Zatz's reply report as an exhibit during that deposition (Ex. LL at 6) and questioned Dr. Zatz about his calculations of sodium-hydroxide ranges based on the claimed gelling agent ranges.  (Ex. LL at 99-100, 159)  Unimed has never challenged the correctness of Dr. Zatz's calculations.

assertions.  Thus, putting aside the unsupportive and irrelevant facts in Unimed's experts' reports and affidavits, the Court is left with naked opinions and conclusory statements.  Such unhelpful "evidence" should not be considered.  See, e.g., Moss v. Potter, No. 04CV1566, 2005 WL 2250690, at *1, 3 (W.D. Pa. Aug. 22, 2005).

Unimed suggests that a patent specification satisfies the written-description requirement where a preferred embodiment "encompasses" a claimed range.  (Pls.' Mem. 24)  But Unimed misstates the law.  In analyzing the claims for compliance with Section 112, the Court must determine if one skilled in the art, reading the original specification, would "immediately discern" the claim limitation at issue, i.e., a disclosed range of sodium hydroxide.  Purdue Pharma L.P. v. Faulding, Inc., 230 F.3d 1320, 1323 (Fed. Cir. 2000).  Even accepting Unimed's "derived range" argument as correct—which Watson does not—nothing in this record indicates that a skilled artisan would "immediately discern" ranges of 1% to 5% and 1% to 3% from the calculated ranges of 0.5% to over 24% and 2.6% to 10.5%, respectively.

### 4.    Unimed's Erroneous Assumptions Lead to Anomalous Results

A simple comparison of the sodium-hydroxide and gelling-agent ranges in claims 1, 10, and 18 with those in claim 9 illustrates how Unimed's analysis leads to anomalous results that do not support its conclusion.

Unimed implausibly contends that those skilled in the art (a) could "derive" the 1% sodium-hydroxide lower limit in claims 1, 10, and 18 from those claims' 0.1% gelling-agent lower limit and (b) could also "derive" the **same** 1% sodium-

1374240 v01

hydroxide lower limit in claim 9 from that claim's 0.5% gelling-agent lower limit. Even assuming carbomer as the gelling agent, as Unimed does, it does not explain how a five-fold difference in the gelling agent can produce identical sodium-hydroxide limits.  This discrepancy demonstrates the fallacy in Unimed's position.

Citing Capon v. Eshhar, 418 F.3d 1349 (Fed. Cir. 2005), Unimed asserts that the Court should not ignore the prior-art knowledge available to those skilled in the art.  (Pls.' Mem. 18-19, 27)  Watson has not suggested otherwise.  In contrast to Capon, however, even with knowledge of the prior art, a skilled artisan could not derive the claimed sodium-hydroxide ranges from the claimed gelling-agent ranges.  Most claims encompass products other than gels and do not require a carbomer as a gelling agent (or thickener).  Dr. Bowman conceded this when he testified that hydroxypropylmethyl cellulose, a nonacidic material, can constitute the "gelling agent."  (Ex. 48 at 47-49, 90-93)  Dr. Bowman also testified that those skilled in the art would be **unable** to determine the amount of sodium hydroxide needed to neutralize a nonacidic gelling agent.  (Ex. 48 at 144-145)  Thus, Capon does not apply to this case.

Even assuming a carbomer as the gelling agent, Unimed admits that carbomers differ in their respective properties, with pH plateau regions that start at different points, end at different points, and span different ranges.  (Ex. 49 at 1-5; Pls' State. of Add'l Mat'l Facts ¶¶ 28, 32)  For example, Dr. Bowman testified that

1374240 v01

the pH plateau region will be broader at higher concentrations of carbomer and that the pH plateau region is different for different carbomers.  (Ex. 48 at 117-121)

      B.     Unimed's Other Evidence Fails to Establish
             the Existence of a Material Factual Issue

      Unimed also relies on the testimony of Dr. Joel Zatz (Watson's expert), and Dr. Charles Ebert (a Watson employee) to establish a material factual issue. Unimed argues that Drs. Zatz and Ebert acknowledged that those skilled in the art could derive the sodium-hydroxide concentration from a known concentration of gelling agent.  (Pls.' Mem. at 28)  Neither made such an admission.  Instead, Dr. Ebert testified that Watson was able to reverse engineer **the AndroGel® formulation**.  (Pls.' Ex. EE at 116)  Table 5 discloses the AndroGel® formulation with a single data point for sodium hydroxide.  Watson tested AndroGel® to determine its pH and viscosity, and then, using a specific carbomer resin, it matched AndroGel®'s pH and viscosity using a particular amount of sodium hydroxide.  (Pls.' Ex. EE at 116)  That Watson could reverse engineer a product containing a particular amount of sodium hydroxide has no bearing on whether those skilled in the art could derive **the claimed sodium-hydroxide ranges** from the claimed gelling-agent ranges.  First, the claims are not limited to AndroGel®, nor do they require a specific pH, specific viscosity, or a specific carbomer. (Ex. 1, col. 49, l. 59 to col. 52, l. 59)  Second, as explained above, even if the claims were limited to all the properties of AndroGel®, the calculated sodium-

hydroxide ranges do not correspond to the claimed sodium-hydroxide ranges. Thus, Dr. Ebert's testimony concerning **AndroGel®**—the commercial embodiment of the patent—does not support Unimed's position.

Dr. Zatz's testimony similarly concerns a skilled artisan's ability to calculate the amount of sodium hydroxide in the AndroGel® formulation.  (Pls.' Ex. LL at 152-159)  Again, the ability to reverse engineer Unimed's commercial product does not show that a genuine issue of material fact exists about the lack of support for Unimed's patent claims.

## **CONCLUSION**

The standard that Unimed has failed to satisfy is this: would one skilled in the art "immediately discern" the claim limitations at issue (i.e.—range values of 1% to 3% or 1% to 5% sodium hydroxide)?  Ranges are numerical.  Unimed does not demonstrate how one could "derive" (i.e.—calculate) those numbers.

No issues of expert credibility or scientific opinion stand in the way of summary judgment.  Unimed has not shown how to calculate the claimed ranges. And the basic math that stands in Unimed's way is fact.  It exists outside the realms of credibility or opinion.

In short, Unimed has failed to present sufficient evidence showing that a genuine issue of material fact exists concerning invalidity of claims 1-30 under § 112.  Moreover, the extrinsic, conclusory opinions proffered by Unimed should be excluded.  And even if accepted as evidence, those statements fail to show that

those skilled in the art could derive the claimed sodium-hydroxide ranges from the

claimed gelling-agent ranges.  Therefore, Watson respectfully requests that the

Court grant its summary-judgment motion that claims 1-30 are invalid under § 112

Dated: January 19, 2005

Respectfully submitted,

MORRIS, MANNING & MARTIN, LLP
Attorneys for Defendant
Watson Pharmaceuticals, Inc.

/s/  David A. Rabin

David A. Rabin
Georgia Bar No. 591469

1600 Atlanta Financial Center
3343 Peachtree Road, NE
Atlanta, Georgia 30326
Telephone: (404) 233-7000
Fax: (404) 365-9532

Of Counsel:

Barry S. White, Esq.
Steven M. Amundson, Esq.
John G. Taylor, Esq.
Joyce W. Luk, Esq.
FROMMER LAWRENCE & HAUG LLP
745 Fifth Avenue
New York, New York  10151
Telephone: (212) 588-0800
Fax: (212) 588-0500

1374240 v01

## CERTIFICATE OF COMPLIANCE

I hereby certify, pursuant to Rule 7.1D of the Local Civil Rules of the

United States District Court for the Northern District of Georgia, that this brief has

been prepared with one of the font and point selections approved by the Court in

LR 5.1C.

/s/ David A. Rabin
David A. Rabin
Georgia Bar No. 591469

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

UNIMED PHARMACEUTICALS, INC.,   )
a Delaware corporation, and   )
LABORATORIES BESINS   )
ISCOVESCO, a Delaware corporation,   )
   )
       Plaintiffs,   )     CIVIL ACTION FILE
   )
vs.   )     NO. 1:03-cv-2501-TWT
   )
WATSON PHARMACEUTICALS, INC.,   )
a Nevada corporation,   )
   )
       Defendant.   )

## CERTIFICATE OF SERVICE

I hereby certify that on January 19, 2005, a true and correct copy of the foregoing document was filed electronically via CM/ECF in the United States District Court for the Northern District of Georgia, with notice of same being electronically served by the Court, addressed to:

          Jerry B. Blackstock, Esq.
          Hunton & Williams, LLP
          4100 Bank of America Plaza
          600 Peachtree Street, N.E.
          Atlanta, Georgia 30308-2216

James R. Ferguson, Esq.
Mayer, Brown, Rowe & Maw LLP
71 South Wacker Drive
Chicago, Illinois 60606

/s/ David A. Rabin
David A. Rabin
Georgia Bar No. 591469

MORRIS, MANNING & MARTIN, LLP
1600 Atlanta Financial Center
3343 Peachtree Road, N.E.
Atlanta, Georgia 30326-1044
(404) 233-7000

1374240 v01